# HOLMES et ux. v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### In Banc, November 27, 1907.

1. **NEGLIGENCE: Engineer: Looking Outside of Track.** It is the duty of an engineer driving a dangerous locomotive engine across a populous street of a city, where men, women and children on foot and in vehicles of all kinds are to be expected, to keep a vigilant watch for persons not only on but approaching the track, and to have the engine in reasonable control, so as to be able to stop if necessary when a danger that would be expected to arise does arise. It is his duty to look beyond the narrow bounds of the rails to see if any one, especially a child, is approaching the track.

2. ——: ——: ——: **Degree of Care.** The degree of care is always commensurate with the degree of danger. The engineer's field of observation to avoid danger is as wide as the field which the danger he creates covers.

3. ———: ———: ———: **Running Train at High Speed.** The running of a train through a populous town at a rate of speed of from twenty to thirty-five miles an hour, when the engineer by looking when he was five hundred feet from a crossing could have seen that two children eight or ten years old were running towards the track and into danger, no danger signal being sounded until the train was within one hundred feet or so of the crossing, is negligence.

4. ———: ———: ———: **Child on Track.** It is not the law that an engineer is under no obligation to do anything to avoid injuring a child until the child is actually on the track. It is his duty to see a child running towards the track in a populous city and to do what he can to prevent injury to the child.

5. ———: **Injury to Child: Defendant's Liability.** Defendant railroad company is liable only for its own negligence, and is not to be held liable for the consequences of the reckless conduct of the injured child. If its plea of contributory negligence is not sustained, it is not charged with the consequences of the child's negligence, but it is not excused thereby for the result of its own negligence.

6. ———: ———: ———: **Concurring Acts of Negligence.** Ordinarily a defendant guilty of negligence is relieved from the liability for his own conduct if the person injured was himself guilty of negligence that contributed to the result. But this rule does not obtain where the injured person is a child too young and immature to observe the care necessary to his own preservation. In such case the law does not excuse defendant's negligence because the negligence of the child contributed to the injury.

7. ———: ———: **Humanitarian Rule.** The question of whether or not there was evidence tending to show that after the engineer saw the child in peril he could, by the exercise of ordinary care, have averted the accident, need not be considered where the case was not given to the jury with that question in it.

8. ———: ———: **Contributory Negligence.** Whether or not a child eight years old, who on his way home from school, amid confusing circumstances, runs in front of an oncoming train being itself negligently run, without looking, is guilty of contributory negligence, is a question for the jury.

Appeal from Johnson Circuit Court.—*Hon. N. M. Bradley,* Judge.

AFFIRMED.

*R. T. Railey* for appellant.

(1)   The positive, affirmative testimony of witnesses, who heard a bell ring or a whistle sounded, is not contradicted by those who did not hear it, unless the attention of the latter was called thereto, and they failed to hear the same.   Henze v. Railroad, 71 Mo. 638; Britton v. Railroad, 81 N. W. 254; Culhans v. Railroad, 60 N. Y. 137; McKeever v. Railroad, 88 N. Y. 667; Urias v. Railroad, 152 Pa. St. 326; Bohan v. Railroad, 61 Wis. 391; Railroad v. Elliott, 28 Oh. St. 346; Stitt v. Huidekopers, 17 Wall. 393; Railroad v. Pierce, 39 Kan. 395; Railroad v. Lane, 33 Kan. 702. (2)   No causal connection was attempted to be shown between the rate of speed at which the train was running and the injury to deceased.   The latter, according to plaintiffs' theory, never saw the train.   If he did not, then he was not misled by the rate of speed at which the train was running.   Henry v. Railroad, 76 Mo. 293; Warner v. Railroad, 178 Mo. 134; Com. Co. v. Railroad, 113 Mo. App. 547.   If the deceased knew the train was approaching, then he was guilty of gross negligence, even for a minor, in running headlong and jumping into a train as it went over the crossing.   We insist that the deceased knew the train was coming and that there was no evidence to the contrary.   No warnings whatever were necessary as to him, and by reason thereof, plaintiffs are not entitled to recover.   Hutchinson v. Railroad, 161 Mo. 253; Murray v. Railroad, 176 Mo. 189; Heintz v. Railroad, 115 Mo. App. 671; Railroad v. Willis' Adm'r, 97 S. W. 23.   There can be no middle ground in regard to this matter.   It must be said that he can go blindfolded, or shut his eyes, and rapidly run and jump into a train, or he failed to exercise any care whatever.   We therefore contend that on the undisputed facts. the cause should be re-

versed, without remanding, and judgment entered here for defendant. If he failed to exercise any care whatever, and recklessly jumped into a moving train, in front of him, it is the duty of the court to declare, as a matter of law, that he was guilty of contributory negligence and that the plaintiffs are not entitled to recover. Spillane v. Railroad, 135 Mo. 414; Payne v. Railroad, 136 Mo. 562; Graney v. Railroad, 157 Mo. 678; Schmitt v. Railroad, 160 Mo. 58; Walker v. Railroad, 193 Mo. 480; Wendell v. Railroad, 91 N. Y. 424; Tucker v. Railroad, 124 N. Y. 308; Thompson v. Railroad, 145 N. Y. 200; Motel v. Railroad, 2 How. (N. S.) N. Y. 30; Railroad v. Murray, 62 Ill. 326; Henderson v. Railroad, 74 N. W. 525; Trudell v. Railroad, 85 N. W. 250; Givens v. Railroad, 72 S. W. 321; Hayes v. Norcross, 39 N. E. 282; Beach on Con. Neg. (2 Ed.), sec. 117, p. 150; 3 Elliott on R. R., sec. 1172; Murray v. Railroad, 93 N. C. 92; Murphy v. Railroad, 73 N. E. 1018; Messenger v. Dennie, 137 Mass. 197; Serano v. Railroad, 99 N. Y. S. 1103; Baker v. Railroad, 62 Hun 39. (3) Even if the record warranted the submission of defendant's alleged negligence to the jury, still, the contemporaneous or concurring negligence of deceased should bar a recovery herein. Boyd v. Railroad 105 Mo. 379; Spillane v. Railroad, 135 Mo. 427; Watson v. Railroad, 133 Mo. 250; Peterson v. Railroad, 156 Mo. 559; Holwerson v. Railroad, 157 Mo. 216; Davies v. Railroad, 159 Mo. 6; Hook v. Railroad, 162 Mo. 584; VanBach v. Railroad, 171 Mo. 347; Guyer v. Railroad, 174 Mo. 351; Zumault v. Railroad, 175 Mo. 311; Moore v. Railroad, 176 Mo. 542; Evans v. Railroad, 178 Mo. 516; Koons v. Railroad, 178 Mo. 607; Ries v. Railroad, 179 Mo. 7; Petty v. Railroad, 179 Mo. 674; Schmidt v. Railroad, 191 Mo. 232; Green v. Railroad, 192 Mo. 138; Clancy v. Railroad, 192 Mo. 652; Walker v. Railroad, 193 Mo. 580; Boring v. Railroad, 194 Mo. 547; Sanguinette v. Railroad, 196 Mo.

488; McGrath v. Railroad, 197 Mo. 107; Sites v. Knott, 197 Mo. 711. Deceased was never in danger or on the track until he jumped into the locomotive. Signals could then have done him no good, and, besides, he knew the train was coming and attempted to beat it over the crossing. The locomotive and deceased appeared contemporaneously at the crossing, and under the uncontroverted facts in this record plaintiffs ought not to recover.

*O. L. Houts* and *Charles E. Morrow* for respondents.

(1) The failure to ring the bell as required by the statute entitled plaintiffs to recover under the first count of the petition, unless the deceased was guilty of contributory negligence. Holmes v. Railroad, 190 Mo. 98; Stotler v. Railroad, 98 S. W. 518; Hanlon v. Railroad, 104 Mo. 381; Lloyd v. Railroad, 128 Mo. 595; Lamb v. Railroad, 147 Mo. 171; Reed v. Railroad, 107 Mo. App. 238. Deceased was a negro boy, an infant, only eight years of age, and was not guilty of contributory negligence as a matter of law in failing to look and listen for a train. He was only required to use such care as one of his age and experience would use. It was a question for the jury. Holmes v. Railroad, 190 Mo. 98; Dlauhi v. Railroad, 105 Mo. 645; Mullin v. Railroad, 196 Mo. 579; Anderson v. Railroad, 161 Mo. 424; Ruschenberg v. Railroad, 161 Mo. 70; Campbell v. Railroad, 175 Mo. 161; Heinzle v. Railroad, 182 Mo. 528; Burger v. Railroad, 112 Mo. 249; Deschuer v. Railroad, 98 S. W. 737; Koenig v. Railroad, 194 Mo. 564; Wise v. Railroad, 198 Mo. 558. In this case there were confusing circumstances. The freight train puffing and blowing and bell ringing and headed right toward the crossing and the older brother saying to the deceased, "Come on, let's get across out of the way of the freight train." His attention

was attracted to it. Holmes v. Railroad, 190 Mo. 98; Walker v. Railroad, 193 Mo. 480. These questions were all passed on by this court on former appeal in this case. That decision is the law of this case and the questions are not open for review now. Mills v. Railroad, 94 S. W. 973; Overall v. Ellis, 38 Mo. 209; Chapman v. Railroad, 146 Mo. 481; Baker v. Railroad, 147 Mo. 140; Bealey v. Smith, 158 Mo. 515; Carey v. West, 165 Mo. 452; Butler Co. v. Bank, 165 Mo. 456; Taussig v. Railroad, 186 Mo. 269. (2) The engineer saw, or by the exercise of ordinary care could have seen, the deceased, a child, in peril, trotting towards the track, his attention attracted by a freight train, with steam blowing off and bell ringing, in time to have given him a danger signal and to have stopped the train and checked its speed and avoid killing him. Defendant is liable although the deceased is guilty of contributory negligence. Holmes v. Railroad, 198 Mo. 98; Jett v. Railroad, 178 Mo. 664; Kelley v. Railroad, 75 Mo. 138; Meeker v. Railroad, 178 Mo. 173; Klockenbrink v. Railroad, 172 Mo. 678; Morgan v. Railroad, 159 Mo. 262; Lloyd v. Railroad, 128 Mo. 595; Schlereth v. Railroad, 115 Mo. 87; Kellny v. Railroad, 101 Mo. 67; Livingston v. Railroad, 170 Mo. 452; Baird v. Railroad, 146 Mo. 265; Bunyan v. Railroad, 127 Mo. 12. (3) It was the duty of defendant's servants to be on the lookout and especially for children and to exercise ordinary care to keep from injuring them. Heinzle v. Railroad, 182 Mo. 528; Livingston v. Railroad, 170 Mo. 452; Meeker v. Railroad, 178 Mo. 173; Baird v. Railroad, 146 Mo. 265; Wise v. Railroad, 198 Mo. 509; Aldrich v. Railroad, 101 Mo. App. 77; Moritz v. Railroad, 102 Mo. App. 657; Bunyan v. Railroad, 127 Mo. 12.

VALLIANT, J.—Plaintiffs' child, eight years old, was struck and killed by a locomotive engine drawing a passenger train on defendant's road at the crossing

of Warren avenue in the city of Warrensburg. The petition charges that the injury was caused by the negligence of defendant's servants operating the engine. This is the second appeal in this case.

At the first trial the court gave a peremptory instruction to the jury at the close of the plaintiff's evidence to find for the defendant; from the judgment following the verdict on that instruction the plaintiffs appealed. On that appeal this court reversed the judgment and remanded the cause to be retried.

The evidence before us then tended to show negligence on the part of the defendant's servants operating the engine causing or contributing to cause the injury, and also negligence on the part of the child also so contributing, unless it should be found that on account of the tender years and immaturity of the child he was incapable of committing negligence in the legal sense of that term. We then held that whether the child under the facts shown in the evidence was capable of committing negligence in that sense was a question of fact for the jury and not for the court. The cause went back and was retried in the circuit court and that question was submitted to the jury; the verdict was for the plaintiffs for the statutory penalty, $5,000, and the defendant has now appealed. The evidence for the plaintiffs at the second trial was the same as that at the first trial, with perhaps some slight changes which we will presently notice; therefore, it will not be necessary to restate the substance of that evidence now, but it will be necessary to read the opinion on the former appeal in connection with this for an understanding of the case made by the plaintiffs' evidence, and also for an understanding of what the court then decided as to the law of the case as it was then presented. [Holmes v. Railroad, 190 Mo. 98.]

At the second trial defendant introduced a number

of witnesses whose testimony tended to contradict that of the plaintiffs' witnesses in some particulars, especially in reference to the ringing of the bell and the sounding of the whistle, and the learned counsel for defendant thinks that this evidence also shows that the child saw this train coming and recklessly threw himself in front of it.

In reference to the sounding of the whistle, three places along the railroad are mentioned by the witnesses, first, the Fort Scott crossing which is one mile west of Warren street, the place of the accident; second, the whistling post near the Brewery, a quarter of a mile west of Warren street, and, third, Mulberry street, 650 feet west of Warren. The testimony shows without conflict that the road-crossing whistle signal was given at the Fort Scott crossing, and it shows with but little conflict that the whistle sounded the station signal at the whistling post near the Brewery; and although there was some evidence on behalf of the defendant that the whistle was sounded at the Mulberry street crossing, yet even the defendant's engineer does not sustain that position, and the testimony is in irreconcilable conflict on the point of the sounding of the whistle after it sounded at the Brewery. The testimony of the engineer was that he sounded the whistle at the whistling post near the Brewery, and not again until he sounded the danger signals when he was within a hundred feet of the crossing, when he saw that the boy that was in front was within forty or fifty feet of the crossing and aiming to cross. The testimony for the plaintiffs was that the whistle was not sounded after passing the Brewery until in the instant of the accident. The evidence showed that the engineer could have seen these boys when he was from 500 to 700 feet distant, and they were from 130 to 150 feet from the track running towards it, yet he testified that he did not look to the right or left beyond the railroad right

of way.  He said: "I was looking along the track.  Q. You were not looking south of the crossing at all?  A. Not any particular distance south.  Q.  You just looked along the track?  A.  Yes, sir.  Q.  And you never looked south of the crossing to see who was coming down that street at all, until you saw this boy, did you? A.  Nothing that attracted my attention.  Q.  I say you were not looking out that way?  A.  I wasn't especially looking down the street. . . .  I saw when he was in—well, my vision would reach out forty or fifty feet on each side of the track.  Q.  But you didn't look out any further than that?  A.  I didn't try to look out any further, I don't know as I could see any further."  The engineer also testified: "Q.  Well, you saw this boy? [meaning the one that was in the lead]. A.  Yes, sir.  Q.  How far was he from the track?  A. I think forty or fifty feet.  Q.  And he was running? A.  Yes, sir.  Q.  Right towards the track?  A.  Yes, sir.  Q.  And looking north?  A.  Yes, sir, looking ahead of him."  He also testified that the boy crossed the track within ten, twelve or fifteen feet in front of the engine.  The engineer must have been mistaken in his estimates; the boy was either very much nearer the track when the engineer discovered him, or else the engine was very much farther from the crossing than the engineer estimated, because if the engine was going thirty or thirty-five miles an hour, as the plaintiffs' witnesses say it was, or even if it was going only twenty miles an hour, as the engineer says it was, it was going several times as fast as the boy was, and if the boy was forty or fifty feet away and the engine was only one hundred feet distant it would have crossed over before the boy had covered half the distance he was to go.

The defendant's testimony was that the bell was being rung continuously from the time the engine passed the whistling post at the Brewery until the ac-

cident occurred, the testimony for the plaintiffs was to the contrary; on that point it may be said there was substantial testimony on both sides.

Defendant's learned counsel attach some importance to a sentence that occurs in the statement of the facts of the case in the opinion on the former appeal, viz: "There was a freight train standing on a side track just east of the crossing 'with steam on and puffing,' and the attention of the boys was attracted to it as they ran along." It is not disputed that the freight train was there, headed for the crossing, waiting the coming of this passenger train, and that it was "with steam on and puffing," but it is contended that it was an assumption of fact, without evidence, to say that the attention of the boys was attracted to it, because, it is said, the only testimony that the attention of the boy who was killed was attracted to the freight train was that of the other boy who escaped and who testified that he was noticing the freight train and he supposed his brother was doing so also. Whether the attention of the boys was attracted to the freight train and they were hurrying to get across in front of it, cannot be known as with absolute certainty, but it was an inference that was naturally to be drawn from the circumstances. These two children were in the habit of crossing that track daily going to and coming from school, their attention had been called by their grandmother and their teacher to the danger that attended the crossing; therefore, when they saw one of these dangerous machines against which they had been warned emitting noise and steam, puffing under the restraint of being held, who can say what effect it had on the timid imagination of a child eight years old?

The nine-year-old brother of the child that was killed testified that he saw the freight train and was running to get across ahead of it, and on this second

trial he testified that he told his brother, who was a few feet behind him, to get across out of the way of the freight train; he also testified that he did not at that time see the passenger train. Thus we have the positive testimony of one of the boys that his attention was attracted to the freight train and that he attracted his younger brother's attention to it, and the conduct of both was consistent with that fact. Defendant insists that the evidence shows that the deceased child saw this passenger train, yet he went headlong into the danger. If that was the fact it would be a very strong circumstance to prove that the child was not of sufficient discretion to be held guilty of contributory negligence. No sane person of mature years, not bent on suicide, would have acted as that child did if he had seen the train coming so close to him. But the testimony of the witness on whom the defendant relies to prove that fact is not clear or satisfactory. That witness said he saw the boys as they approached the crossing, "one was looking pretty straight ahead, but the other one was watching back west; looked to me like he was watching the train." The witness was not near enough to have a very minute view of the boys and he was not engaged in any business that required him to give them particular attention; he was inaccurate in his description of their movements, he said they came from the north side of the track, crossed over to the south side and were "sort of standing there," then turned north again towards the track. His testimony as to the movements of the boys is in conflict with that of all the other witnesses, and he was the only one who undertook to say that the deceased boy had his face turned west; all the other witnesses said that both the boys were facing north.

At the close of the plaintiff's evidence and again at the close of all the evidence the defendant asked an instruction to the effect that the plaintiffs' were not

entitled to recover, which instruction the court refused and defendant excepted.

The cause was submitted to the jury under the following instructions for plaintiffs:

"1. The jury are instructed that in approaching the crossing of Warren street with its passenger train mentioned in evidence it was the duty of defendant's engineer in charge of said train and the law required him to be watchful and on the lookout for persons traveling on the street so as to avoid injuring them.

"2. And if the jury believe from the evidence that Freeborn G. Holmes was traveling on said Warren street and approaching defendant's track where the same crosses said street and that he was at the time of and just preceding the injury in the exercise of such care and caution as a person of his age, discretion and experience would naturally and ordinarily use under similar circumstances and that defendant's said engine and train approached said Freeborn G. Holmes and said crossing along its said track and he was, or was about to place himself in danger of being struck by said engine and train and injured, and that defendant's said engineer in charge of said train saw, or by the exercise of ordinary care could have seen his said danger or that he was about to place himself in a position of danger, in time by the exercise of ordinary care to have sounded the whistle on said engine or to have stopped said train, or checked the speed of said train, and prevented injury to said Freeborn G. Holmes, and that defendant's said engineer in charge of said train failed to exercise such ordinary care and failed to sound said whistle, or failed to stop said train, or failed to check the speed of said train, and that by reason of such failure to exercise such ordinary care said whistle was not sounded, or said train was not stopped, or the speed of said train was not checked, and by reason thereof the said Freeborn G. Holmes was struck by

said engine and train and killed, then you must find for the plaintiffs on the second count in their petition.

"3.   The court instructs the jury that it was the duty of defendant's employees in charge of its locomotive and train to ring the bell on the engine at Mulberry street and keep the bell ringing until the engine crossed Warren street.   And if the jury believe from the evidence that defendant's said employees did not so ring said bell and by reason thereof Freeborn G. Holmes, while in the exercise of such care as ought reasonably to have been expected from one of his age and capacity, was struck and killed by the said engine, then the jury must find for the plaintiffs on the first count of the petition.

"4.   If the jury believe from the evidence that Freeborn G. Holmes was a boy of immature age and had not the capacity of an adult, and that he exercised such care as ought reasonably to have been expected for one of his age and capacity, then he was not guilty of contributory negligence."

Exceptions to the giving of those instructions were duly preserved.

There were also instructions defining ordinary care, the amount of the verdict if for the plaintiff, and the form of the verdict, etc.

The main insistence of the defendant now is that the court should have given the peremptory instruction for a verdict for the defendant.

So far as the question of the defendant's negligence is concerned we think the testimony is stronger for the plaintiffs now than it was when the case was here on the former appeal.   Even the defendant's testimony has strengthened the plaintiff's case in that particular.   The engineer testified that he did not look to the north or to the south of his track to see if any one was approaching it; he really seemed to be of

the opinion that it was no part of his duty to look elsewhere than in the narrow space of the railroad track. That idea seems to be embodied in one of the instructions asked by defendant and refused, viz: "If the jury believe from the evidence that deceased was struck by defendant's locomotive at Warren street crossing, before he got upon defendant's track, then your verdict must be for defendant regardless of all other issues herein." To lay the foundation for that instruction the defendant endeavored to show that the child was struck, not by the cow-catcher, but by the pilot beam, and therefore he was not between the rails and therefore the defendant was not liable. It is the duty of an engineer driving a dangerous engine through a populous street of a city where men, women and children on foot and in vehicles of all kinds are to be expected, to keep a vigilant watch for persons not only on but approaching the track and to have the engine in reasonable control so as to be able to stop if necessary when a danger that could have been reasonably expected to arise, does arise. His duty in this respect is different when he is going through a populous part of a city from what it is when he is on a part of the railroad where people are not expected to be. In many of the cities of this State there are ordinances limiting the speed of such engines to six miles an hour and this court has repeatedly held such ordinances valid, yet here was an engineer running his engine in a populous part of the city at the rate, according to plaintiff's witnesses, of thirty to thirty-five miles an hour, according to his own testimony twenty miles an hour, yet he says that he did not try to look to the right or the left of his track and the result was he did not see these boys until they were so close to the track that it was impossible to avoid the accident. His duty was of course to look ahead and not lose sight of his track, but the eye is quick of motion and a glance to

the right and the left would not have impaired his view of the track. He could have seen these children certainly when he was within 500 feet of the crossing and if he had looked he would have seen that they were running into danger and if he had then sounded the danger signal he might have avoided killing the child. But his testimony gives the impression that he did not consider it within the field of his duty to look beyond the track before him and an instruction asked by defendant seems to imply that defendant's view of the law is that unless the child was actually on the track between the rails when he was struck, the verdict must be for the defendant "regardless of all other issues."

If that engineer was taught that he was under no obligation to look to the right or the left of his track when running his engine at a high rate of speed in a populous part of a city, or that he was charged with care to avoid injuring people only when they were actually on his track, his teaching was wrong. His field of observation to avoid danger was as wide as the field which the danger he created covered. The degree of his care was commensurate with the degree of the danger. In Livingston v. Railroad, 170 Mo. 452, the railroad company contended that the engineer was under no obligation to do anything to avoid injuring the child until it was actually on the track, but this court held that it was his duty to have seen the child running towards the track and to have done what he could under the circumstances to prevent the injury, and we so hold in this case.

In the brief for defendant, pages 61 and 139, the idea is advanced that the only theory on which the plaintiffs' judgment could be sustained would be that the defendant is liable for the consequences of the reckless conduct of the deceased child. That is a misconception of the theory on which the defendant's lia-

bility rests. The defendant is liable only for its own negligence, and if its plea of contributory negligence is not sustained, still, it is not charged with the consequence of the child's negligence; but it is only not excused thereby for the result of its own negligence. It is not always essential to a plaintiff's recovery, in an action for tort, that the evidence should show that the accident was the result of the defendant's negligence alone. A defendant may be liable if his negligence contributes with that of a third person to produce the injury complained of; in such case he is not held liable for the negligence of the third person, but only for his own negligence, without the contributing force of which the negligence of the third person would not have caused the injury. But the policy of the law is such that ordinarily a defendant guilty of negligence is relieved from the liability for his own conduct if the person injured was himself guilty of negligence that contributed to the result. On that theory the defendant's act is none the less negligent, and he is none the less culpable, but the law will not allow a plaintiff to recover when he himself, or the person for whose injury he sues, was also guilty of negligence contributing with that of defendant to the result. There is reason and justice in that policy of the law; it is an admonition to every one to exercise due care for his own safety, and it authorizes another to presume that he will do so, and, so presuming, adjust his own conduct. But common experience tells us that a child may be too young and immature to observe the care necessary to his own preservation and therefore when a person comes in contact with such a child, if its youth and immaturity are obvious, he is chargeable with knowledge of that fact and he cannot indulge the presumption that the child will do what is necessary to avoid an impending danger. Therefore one seeing such a child in such a position is guilty of negligence

if he does not take into account the fact that it is a child and regulate his own conduct accordingly. An act in relation to a person of mature years might be free from the imputation of negligence while an act of like character in view of a child would be blameworthy. Therefore when the law says to the defendant although the act of the deceased child contributed with your act to produce the result, yet, because of his youth and immaturity, he is not adjudged guilty of negligence, it does not charge the defendant with the consequence of the child's conduct, but it only does not, for that reason, excuse him for its own negligence.

If the defendant in such case had been guilty of no negligence there would have been no accident.

It is also insisted in the brief for defendant that it cannot be held liable because, it says, there was no evidence tending to show that the conduct of the engineer was wilful, wanton or reckless. The learned counsel is there considering the case from the standpoint of what we have in former cases called the humanitarian rule, which allows a plaintiff to recover under certain circumstances although he has himself been negligent. We need not discuss the question of whether or not there was evidence tending to show that after the engineer saw the child in peril he could, with the means at hand and under conditions as they existed, by the exercise of ordinary care, have averted the accident, because the case was not given to the jury with that question in it. · The instructions authorized the jury to find for the plaintiffs only on the theory that the child was at the time exercising that degree of care which could be expected of one of his age, discretion and experience, and an instruction given at the request of the defendant was that if the child ''failed to exercise such care and caution as an ordinarily prudent boy of his age and capacity should have exercised under the circumstances, and by reason thereof contributed to his

own death, then your verdict must be for the defendant, regardless of all other facts in the case.''

Taking the testimony for the plaintiffs and that of the defendant together we think it was sufficient to sustain the verdict on the issue of defendant's negligence.

As to the plea of contributory negligence it is simply a question of whether this child was old enough and mature enough to be chargeable with the consequence of his act. If he had looked west he would have seen this train and if he did not look he was negligent, if one of his years and maturity is to be adjudged guilty of negligence, and if he did look and did see the train yet ran on thinking to beat it over the crossing his act is to be attributed either to the immaturity of his childish judg-ment in attempting to calculate the speed of the train compared with his own speed or else incapacity to appreciate the danger or, if he was of sufficient maturity, then his act must be attributed to a spirit of foolhardy daring. But a child of eight years, though he may know the danger, has not always the coolness of judgment in the face of the danger to avoid it, and often the unfortunate conduct of a child in the presence of a startling danger is attributable to timidity rather than daring, to immaturity rather than foolhardiness. Desperate daring and recklessness are not attributes of childhood, they belong to men whose nerves have hardened with experience.

In the first appeal in this case we said that whether this child was of sufficient maturity to be adjudged guilty of negligence was a question of fact for the jury; on the second trial that question was submitted to the jury with appropriate instruction and we see no reason for disturbing the verdict. The judgment is affirmed. *Gantt, C. J., Burgess, Lamm* and *Woodson, JJ.,* concur. *Fox* and *Graves, JJ.,* dissent.