CHARLES QUIRK, by Next Friend, MAURICE QUIRK, Respondent, v. THE METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 6, 1919.

1. **NEGLIGENCE: Position of Peril: Duty of Employees.** Plaintiff, a boy seven years old, was ordered off a street car, while it was in motion, by the agents of the company, when they knew he was in a position of peril, and while attempting to alight he fell and one of his legs was cut off. It was *held*, that, considering all the evidence, the employees of the company knew the boy was upon the steps in a position of peril, and having failed to take the means to prevent his injury they were guilty of negligence and the company is liable.

2. ————: ————: ————: An instruction which not only detailed what facts were necessary to be shown by plaintiff to entitle him to recover but required the jury to find that these constituted negligence on defendant's part and concluded by telling the jury that if they found while plaintiff was trying to alight he fell "as a direct result of the negligence of the defendant" plaintiff was entitled to recover, is not erroneous.

3. ————: ————: Extent of Duty. Instructions to the effect that the employees of defendant owed the boy no duty other than to refrain from wilfully, wantonly and recklessly injuring him were properly refused as they would have a tendency to mislead the jury, it being the duty of such servants to use ordinary care in removing the boy from the car.

4. ———: Jurors: Grounds of Challenge. The trail court committed no error in excusing a juryman, without challenge, when it was disclosed that he was employed by a corporation which was formerly connected with, and a part of, the defendant company.

Appeal from Jackson Circuit Court.—*Hon. Wm. O. Thomas*, Judge.

AFFIRMED.

Clyde Taylor and Roscoe P. Conkling for appellant.

Harding, Murphy & Harris for respondent.

BLAND, J.—This is an action for personal injuries. Plaintiff recovered a verdict and judgment for $8500 but voluntarily remitted one thousand dollars of that sum, and defendant has appealed.

Defendant's first point is that its demurrer to the evidence should have been sustained. The evidence taken in its most favorable light to plaintiff shows that on the afternoon of July 4, 1910, plaintiff, a boy of the age of seven years, was waiting at the end of the Thirty-first Street car line at 33d and Summit Streets, in Kansas City, Missouri, for his father to come home and take him to a picnic. He was playing with one Francis Eagan, and some other children. They were seated upon the curb of the sidewalk near which was standing a car of the defendant. This car is described as one of a type known as a ''goat'' car. The Eagan boy snatched a fire cracker from plaintiff and ran with the same on to the rear end of defendant's car, plaintiff after him. When both of the boys had gotten on the car the motorman and conductor, who had been in a nearby drug store, came out of said store and the motorman hollered to the conductor, ''Let her go.'' They boarded the car, the motorman in the lead. The latter released the hand brake on the rear of the car and the car started forwards of its own momentum. After this the conductor, who was standing, upon the rear step of the car, told the boys to get off, ''That

they had no business on the car." The boys then proceeded to the front end of the car, the motorman closely behind them. The conuctor remained on the rear platform. The Eagan boy proceeded to the front steps and jumped off the car ahead of the plaintiff, falling and hurting himself slightly. Plaintiff then got upon the front steps when the motorman waved his controller at him saying, "Get off of here boys." Plaintiff stood on the step attempting to get off. The car was coasting down grade and increased its speed as it moved. It increased its speed from seven or eight miles to nine or ten miles per hour and ran about sixty feet while plaintiff was standing on the step.

Plaintiff attempted to get off the car by putting his foot down and raising it up again, evidently trying to touch the pavement. He testified that he was afraid to let go of the car; that he was afraid to get back into the car after what the motarman had said to him. Finally, as before stated, when the car had gone about sixty feet, after plaintiff had gotten on the step, he fell off, his right leg going under the car, resulting in it being cut off about six inches below the knee. The motorman was aware of the presence of plaintiff upon the step, as we will hereinafter point out.

In connection with defendant's insistence that its demurrer to the evidence should have been sustained, it argues that the proximate cause of plaintiff's getting off the car, resulting in his injury, was the waving of the controller by the motorman at plaintiff, and that it was neither pleaded nor proved that the motorman was the agent of the defendant with authority to eject trespassers from its cars.

Plaintiff's instruction No. 1 told the jury that they must find that plaintiff attemped to get off the car at the order and direction of the conductor. The fact that the motorman joined in the request or order of the conductor and that he threatened plaintiff, would not show as a matter of law that the plaintiff got off the car on account of being ordered by the motorman and not by the conductor. Plaintiff did not testify that he was

afraid of the motorman and attempted to get off the car by reason of the fact that the motorman threatened him, but said that he was afraid to get back on the car on account of the threat of the motorman, and (as we construe his evidence) that he was afraid to get off on account of the rapid movement of the car. It was the conductor who gave the original order and the question as to whether or not the proximate cause of plaintiff's getting off the car was the order of the conductor or that of the motorman, was clearly one for the jury.

Defendant urges that there was error in the giving of plaintiff's instruction P-1. In support of this contention defendant urges that the proximate cause of plaintiff getting off or falling off the car was the conduct of the motorman. This point has already been decided against the defendant. This instruction proceeded upon the theory that the conductor ordered plaintiff off the car while it was in motion; that the plaintiff was on the step attempting to get off in obedience to this order; that the motorman and conductor knew that he was attempting to alight therefrom while the car was in motion, and that the motorman negligently failed to stop the car for the purpose of permitting plaintiff to alight. It is the contention of the defendant that the petition proceeds upon the theory that the plaintiff was in a position of peril on the step of the car and not on the theory that plaintiff was on the step attempting to alight from the car. A very ingenious argument is made that there is a substantial difference. There are many reasons why there is no merit in this contention, among which is this:

After verdict the petition must be construed liberally. Applying such a construction the petition alleges that defendant's agents negligently ordered plaintiff off the car while it was in motion; that they saw plaintiff on the step in a perilous position and did not stop the car to permit him to alight. The petition alleges, by inference at least, that plaintiff was on the step and attempting to alight; that this was a perilous position and that defendant's servants knew of it and failed

to stop the car to permit him to alight. The instruction follows the petition as we have construed it.

Defendant urges that there is no proof that the conductor and motorman knew that plaintiff was upon the step. Whether the conductor knew this fact, the motorman certainly did and he should have stopped the car. The fact that the instruction required the jury to find that the conductor also knew it, was an assumption of an unnecessary burden. The evidence shows that the boys were in front of the motorman and conductor as they proceeded to the front end of the car to obey the order given by the conductor that the motorman must have heard; the motorman followed the boys to the front of the car. From this statement the inference is that he knew what the boys were doing. There was only one means of exit in the front of the car and the boys had no way of obeying the conductor except by going down the steps and getting off through this exit. Aside from this the motorman when he reached his position, which was before plaintiff fell, stood in the middle of the front vestibule of the car within two feet of where plaintiff was standing on the step holding on to the front hand rail. The motorman testified that, "I glanced around every once in a while," but he said he did not see plaintiff on the step. Other witnesses testified that there was nothing to prevent the motorman from seeing plaintiff on the step if he had looked. So the jury had a right to disregard the statement of the motorman that he did not see plaintiff. Taking all of this evidence in its most favorable light to plaintiff, it shows that the motorman knew plaintiff was upon the step and in a position of peril. Having had actual knowledge of the impending danger to plaintiff and having failed to take means to prevent his injury after knowing that he was in a position of peril, defendant's servants were guilty of negligence and defendant is liable. [Youmans v. Railroad, 143 Mo. App. 393, l. c. 401.]

There was no error in the giving of plaintiff's instruction P-2. This instruction, like plaintiff's instruc-

tion P-1, is based upon the last chance rule. It not only detailed what facts were necessary to be shown by plaintiff to entitle him to recover but required the jury to find that these constitued negligence on defendant's part and concluded by telling the jury that if they found while plaintiff was trying to alight he fell "as a direct result of the negligence of the defendant," etc., plaintiff was entitled to recover. It is the contention of defendant that the portion of the instruction quoted permits plaintiff to recover upon any theory of negligence and does not confine the negligence to that pleading. There is nothing in this contention. The word "the" before the word "negligence" is a definite article and refers to acts of negligence theretofore set out in the instruction, which acts were those alleged in the petition.

The court did not err in refusing defendant's instructions D-3, D-4 and D-5. Defendant's instruction D-3 told the jury that if they found that—

"    . . .   a lack of ordinary care upon the part of the motorman and a lack of ordinary care upon the part of the boy combined to bring about the casualty, then the plaintiff cannot recover; if you find that the casualty was caused solely and alone by the boy's own negligence or by the mutual and concurring negligence of the boy and the motorman and that any negligence on the part of the motorman without the concurring negligence of the boy would not have caused the casualty then the plaintiff cannot recover and your verdict must be for the defendant."

This instruction was properly refused for many reasons, one being that the tender years of the plaintiff excused him from concurring negligence. [Flower v. Penn Rd. Co., 69 Pa. 1. c. 216; Levin v. Traction Co., 194 Pa. St. 156; Sherman v. Railroad, 72 Mo. 62, l. c. 66; Holmes v. Railway, 207 Mo. 149, l. c. 164-165.]

Defendant's instructions D-4 and D-5 told the jury that the motorman and conductor owed the boy no duty other than to refrain from willfully, wantonly and recklessly injuring him. These instructions were prop-

erly refused as they tended to mislead the jury. The words "willfully," "wantonly" and "recklessly" are ones of technical meaning and should be defined. These words, as applied to the facts in evidence, are not to be taken in their popular meaning. [See Drogmund v. Railway, 122 Mo. App. 154, l. c. 160.] It was the duty of defendant's servants to use ordinary care in removing the boy from the car (Brill v. Eddy, 115 Mo. 596; Farber v. Mo. Pac. Ry. Co., 139 Mo. 272; Winn v. Railway Co., 245 Mo. 406; Southard v. Railway Co., 191 S. W. 1101), and the jury would have been misled had this instruction been given.

Defendant urges that the court erred in excusing without challenge the juryman Page. It appeared upon his *voir dire* examination that this juryman was working for the Kansas City Electric Light & Power Company and had so worked for six years; that although this company and the defendant were separate companies at the time of the trial, the witness had been in the employ of the Electric Light & Power Company during the time that the two companies were connected. The court excused the juryman on the court's own motion because he had been employed by the Kansas City Electric Light & Power Company during the time in which the two companies were connected. We do not think the court abused his discretion in the matter. The position that this juryman occupied toward the defendant, as we get it from the record, was substantially that of an ex-employee. This relationship of the juryman to the defendant was certainly stronger and more intimate than that shown in the case of Garner v. Met., 177 S. W., 177 S. W. 737, cited by defendant. In that case there was no relationship whatever shown between the defendant and the juryman; nothing was shown but that the juryman was acquainted with the attorney for the defendant. In both that case and this the juryman testified that his connection would not bias or affect his verdict. The trial court was not bound by the statement of the juryman that he would not be biased under the circumstances

present in this case. [Theobald v. Transit Co., 191 Mo. 395.]

The point is made that the court erred in refusing to discharge the jury on account of the alleged misconduct of plaintiff's counsel. Plaintiff attempted to show by his father that plaintiff was an ordinarily intelligent boy at the time he was hurt. This was objected to on the ground that it was not proper in rebuttal and that the mentality of the boy was not in issue. Plaintiff's counsel stated in the presence of the jury. "You will raise it in the appellate court." Defendant objected to this remark on the ground that it was improper and asked that the jury be discharged. The court refused to discharge the jury but reprimanded counsel for making the statement and said, "This jury is too sensible to consider a thing like that." We think there was no error under the circumstances in the court refusing to discharge the jury. It was probably improper for plaintiff's counsel to make the remark. Taking it in its most unfavorable light to plaintiff, it was nothing more than a suggestion to the jury that plaintiff expected to win the case and that defendant would appeal it. A jury certainly would not be influenced by an attorney who intimated that he expects to win the case. Attorneys are supposed to entertain such hopes. Nor do we see how the jury could have been prejudiced by plaintiff's intimation that defendant would appeal the case. We are unable to see where there was any statement that defendant was trying to get some error in the case so that it would be reversed, as contended by defendant. Plaintiff's counsel simply suggested that he ought to be permitted to show that the boy was not one above average intelligence and asked defendant's counsel if he would agree not to raise the point in the appellate court if plaintiff desisted in his efforts to prove the matter in the lower court.

The great weight of the evidence shows that defendant's motorman and conductor were guilty of culpable negligence, if not cruel conduct, toward plaintiff. The size of the verdict does not indicate that the

amount was influenced by any improper conduct of plaintiff's counsel at the trial.

The judgment is affirmed. All concur.