## A. J. ANDERSON CO., Inc., v. REICH.
### (No. 10064.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 2, 1922. Rehearing Denied Jan. 20, 1923. Writ of Error Granted by Supreme Court Feb. 28, 1923.)

**1. Explosives ⊚═9—Question of negligence in selling gunpowder to boy of immature years held for jury.**

In an action for injuries sustained to a boy 10 or 11 years of age by the explosion of gunpowder sold to him by defendant, the question was for the jury whether it was negligence to sell the gunpowder to a minor of such tender years, especially where the clerk selling it was informed by the minor that he intended to explode it.

**2. Negligence ⊚═7—One cannot indulge presumption that child whose immaturity obvious will do what is necessary to avoid impending danger.**

Where the youth and immaturity of a child are obvious, a person coming in contact with him is chargeable with knowledge of the facts, and cannot indulge the presumption that the child will do what is necessary to avoid impending danger.

**3. Trial ⊚═260(8)—Refusal of charge on the duty of minors to avoid danger held not error, in view of given charge.**

In an action for injuries to a boy 10 or 12 years of age by the explosion of gunpowder, sold him by defendant's servant, the refusal of a requested charge that the law imposes on minors the duty of giving such attention to their surroundings, and care to avoid danger, as may be expected of persons of their age and capacity, and that a failure to give such attention and care will be contributory negligence, held not erroneous in view of given charge substantially the same but confining it to the plaintiff instead of a reference to minors generally.

**4. Trial ⊚═260(8)—Refusal of charges on assumption of child's discretion to avoid danger in using gunpowder held not erroneous in view of general charge on contributory negligence.**

In an action for injuries to a boy 10 or 11 years old by the explosion of gunpowder sold him by defendant's servant, the refusal of charges that defendant had the right to assume that at the time of the purchase the boy was endowed with the same mental capacity and discretion as boys of his age and intelligence, and that he would use ordinary care in the use of the gunpowder, held not erroneous, in view of the general charge on contributory negligence.

**5. Trial ⊚═253(9)—Refusal of charge eliminating tender age of child and consequent inexperience in handling gunpowder, by explosion of which injured, held not erroneous.**

In an action for injuries to a boy 10 or 11 years old by the explosion of gunpowder sold him by defendant's servant, the refusal of a charge that, in the absence of any information to the contrary or of any fact that would put a person of ordinary care upon notice thereof, defendant had the right to assume that the minor at the time of the sale to him was a boy who would use ordinary care in the use of the gunpowder, held erroneous, because it eliminated the fact of the boy's tender years and consequent inexperience.

**6. Explosives ⊚═9—Sale of gunpowder to child of tender years with knowledge that he intends to explode it held negligence as matter of law.**

Gunpowder is an article of merchandise dangerous in the hands of a child of tender years and inexperience, and one who sells it to such a minor, knowing that the minor intends to explode it, is guilty of negligence as a matter of law.

**7. Trial ⊚═194(16)—Court may advise jury of facts in evidence constituting negligence or due care.**

Where, under the rules of the law, a given class of facts, embodying all the controlling facts in evidence and the reasonable inferences arising therefrom, constitute either negligence or due care, it is proper for the trial judge to tell the jury so for their guidance in returning their verdict.

**8. Appeal and error ⊚═1046(5), 1060(1)—Judgment not reversed for remarks of court or opposing counsel unless manifest that jury unduly influenced.**

Unless it is manifest that the remarks of the court or of counsel for the opposite side unduly influenced the jury, the verdict and judgment will not be disturbed.

**9. Damages ⊚═132(14)—$12,000 for permanent injuries to boy's eyes and throat by gunpowder explosion held not excessive.**

Damages of $12,000 for permanent injuries to the eyes and throat of a boy, caused by the explosion of gunpowder sold him by defendant, held not excessive.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by Florence Reich, as next friend of Adrian Bynum, a minor, against the A. J. Anderson Company, Inc. From a judgment for plaintiff, defendant appeals. Affirmed.

Marvin H. Brown and Charles T. Rowland, both of Fort Worth, for appellant.

Capps, Cantey, Hanger & Short, of Fort Worth, for appellee.

BUCK, J. This suit was brought by Florence Reich, as next friend of her son, Adrian Bynum, a minor, to recover damages against the A. J. Anderson Company, a cor-

---

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

poration, alleged to have resulted from the exploding of a one-third pound of gunpowder, which it was alleged had been negligently sold and delivered to said minor by said company. There was a trial before a jury upon special issues submitted, and the jury found: (1) That on or about December 24, 1919, defendant sold to the minor a quantity of gunpowder. (2) That such selling was negligence. (3) That Adrian Bynum at said date was of such age and inexperience in the use of gunpowder that he was not aware of the danger to himself in handling or using the same. (4) That Adrian Bynum was not guilty of contributory negligence in attempting to handle and use said gunpowder in the manner in which he did explode the same. (5) That said Adrian Bynum was injured by the explosion in question, and that $12,000 was a reasonable compensation for such injuries. From a judgment against defendant for said sum, the defendant has appealed.

Negligence on the part of defendant was alleged in three respects, to wit: First, in selling the gunpowder to said minor; second, in refusing to sell said minor capsules or other receptacles in which a fuse or other means of conveying ignition to said gunpowder could be used; third, in directing and instructing said minor in the use of said gunpowder, and in directing said minor to place said gunpowder in a can and apply a match directly thereto. Defendant answered by a general denial, and specially pleaded that—

"If said instructions were given to said minor by an employee of defendant, that such act was not within the scope of his employment, and that therefore defendant was not liable for any damages resulting therefrom."

No evidence was introduced tending to support the second count. Hence the verdict returned on the special issues and the judgment rendered must rest, if at all, upon the first and third allegations of negligence.

Twenty-nine assignments are urged by appellant, but they will be grouped, where possible, in our discussion.

It is urged that the evidence shows that if any instructions were given by the clerk at the time of the sale, such instructions were given after the consummation of the sale, and at a time when the clerk was no longer engaged in his master's business in making the sale; that at most it is shown that such instructions were given voluntarily by the clerk, and not while the sale was being consummated, and that the master is not responsible for such or for any negligence shown therein. The only proof of the sale by defendant to Adrian Bynum was given in the testimony of Adrian Bynum and Paul Conley, a boy 10 or 11 years old. Adrian is shown to have been 10 years old at the time. Adrian testified:

"I bought some gunpowder from a man. I do not know his name. He was there in Anderson's store, over in the gun department. * * * I paid for the powder. I am asked to state what I said to the man and what the man said to me. I walked into the store. I saw the clerks, and I said to one, 'I want to get some kind of explosive powder to put into capsules,' and he said, 'Come back where the powder is.' He then said it would not go off in capsules; I would have to put it in a bucket. I had some capsules and I showed them to him. He said it would not go off in the capsules, but he did not tell me why. He said they were too small. He said or told me what it would go off in. He said put it in a can. He told me to do something else. He said, 'Put a match to it and put it in a can.' He told me what to do. He said it would make a big noise. That is what I was hunting for. * * * We did something with the powder over at Mr. Bransford's house, or near his house. We exploded it. I stuck the powder in a can and then stuck a match to it, and it exploded in my face. The first match I put to it did not explode, and I was seeking what the matter was. * * * At the time this man told me to put this powder in a can and put a match there and that it would make a big noise, I did not know that that was dangerous to me. * * * I relied on what he told me; that is the reason that I did it."

He further testified that he had never bought any gunpowder before, but that he had been buying and shooting fireworks since he was eight years old; that he did not ask the clerk to give him any instructions, but that the clerk gave them voluntarily; that the witness told the clerk that he was going to "stick the powder in capsules, and he said it would not go off. I did not ask him to tell me how I would shoot it at all." But Paul Conley testified that the clerk, just as the two boys were starting out of the store, asked them what they were going to do with the powder; that Adrian said they were going to put it in capsules, and that the clerk told them to put it in a snuff box or can and make it air tight; that it would not go off if put in capsules.

[1] A peremptory instruction for defendant was not called for on the ground that the evidence showed unmistakably that the instructions alleged and shown to have been made were made at a time when the clerk was not engaged in his master's business, under such cases as Railway v. Cooper, 32 S. W. 517, and Railway v. Currie, 100 Tex. 136, 96 S. W. 1073, by the Supreme Court; for Adrian's testimony indicates that the instructions were given while the sale was being made, and we are not prepared to hold that the giving of instructions, at such time by a clerk, how to use a dangerous explosive, especially to an infant of tender years, is so disconnected with the employment of the clerk as to render the master not liable for any negligence in giving the instructions. In fact, in our opinion, at least, it was a question for the jury whether it was negligence

to sell gunpowder to a minor of such tender years, especially where the clerk selling it was informed by the minor that he intended to explode it.

In the case of Carter v. Towne, 98 Mass. 567, 96 Am. Dec. 682, it was alleged that—

"The defendants carelessly and unlawfully sold and delivered to the plaintiff two pounds of gunpowder, the plaintiff then being a minor of the age of eight years, and having neither experience nor knowledge in the use of gunpowder, and being an unfit person to be intrusted with the same, all which the defendants knew."

And that—

"The plaintiff, in ignorance of its effects, and using that care of which he was capable, exploded said gunpowder, and by such explosion was severely and dangerously burned."

A demurrer by the defendants was sustained and the plaintiff appealed. The court said:

"By the well-settled rule of the common law, a person who negligently uses a dangerous instrument or article, or causes or authorizes its use by another person, in such a manner or under such circumstances that he has reason to know that it is likely to produce injury, is responsible for the natural and probable consequences of his act to any person injured, who is not himself in fault. The liability does not rest on privity of contract between the parties to the action, but on the duty of every man so to use his own property as not to injure the persons or property of others."

In this case, the case of Dixon v. Bell, 1 Stark, 287, s. c., 5 Maule & S. 198, and other cases were discussed. In the cited case the court further said:

"The declaration in this case and the demurrer admits, that the plaintiff was a child of eight years old, had neither experience nor knowledge in the use of gunpowder, and was an unfit person to be intrusted with it; that the defendants, knowing all this, sold and delivered to him two pounds of gunpowder; and that he, in ignorance of its effects, and using that care of which he was capable, exploded it, and by the explosion was severely injured. This injury was clearly, within the authorities above cited, the proximate and natural consequence of the defendants' negligence in selling a dangerous article to a child who they knew to be, by reason of his youth and ignorance, unfit to be intrusted with it, and who probably, therefore, as they had reason to believe, might innocently and ignorantly play with it to his own injury. The case cannot be distinguished in principle from that of a man who delivers a cup of poison to an idiot, or puts a razor into the hand of an infant in its cradle. The want of any direct intention to injure does not excuse the defendants. 'Every man must be taken to contemplate the probable consequences of the act he does.' By Lord Ellenborough, C. J., in Townsend v. Wathen, 9 East, 280."

In the case of Bosserman v. Smith, 205 Mo. App. 657, 226 S. W. 608, the plaintiff, a boy 8½ years old, went into defendant's store to buy some fireworks known as "red fire," which could be used without particular danger. Instead of the "red fire," the clerk sold and delivered to the child a sort of fireworks known as a "mine," which would explode when lighted with a match or fire. In passing on the negligence of the defendant in selling a dangerous article to the child, the Kansas City Court of Appeals said:

"There is no question but that the 'mine' was an exceedingly dangerous article to be placed in the hands of a child of tender years, and it is well established that the sale of such an article to such a child is an actionable wrong for which the seller will be held liable in case damage results to the child as a proximate consequence thereof"—citing such cases as Binford v. Johnston, 82 Ind. 426, 42 Am. Rep. 508; McEldon v. Drew, 138 Iowa, 390, 116 N. W. 147, 128 Am. St. Rep. 203; and the case of Carter v. Towne, supra.

[2] Where the youth and immaturity of a child are obvious, as we believe is true in this case, a person coming in contact with him is chargeable with knowledge of the facts, and cannot indulge the presumption that the child will do what is necessary to avoid impending danger. Holmes v. M. P. Ry. Co., 207 Mo. 149, 105 S. W. 624. In this connection might be cited certain cases involving the question of negligence of the defendants who left or placed explosives on their premises which were found by children of tender years, and exploded and the children were injured. Harriman v. Pittsburg, C. & S. T. Ry., 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507; Nelson v. McLellan, 31 Wash. 208, 71 Pac. 747, 60 L. R. A. 793, 96 Am. St. Rep. 902; Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154. In some of these cases, for instance Binford v. Johnston, an Indiana case above cited, there was a law prohibiting the sale of explosives to minor children under a certain age, but in other cases no such prohibition was shown. See the Texas cases of Little v. McCord Co. (Tex. Civ. App.) 151 S. W. 835; City of Lubbock v. Bagwell (Tex. Civ. App.) 206 S. W. 371, writ refused.

The court submitted to the jury the issue:

"Was plaintiff, Adrian Bynum, on December 24, 1919, a person of such an age and of such inexperience in the use of gunpowder as that he was not aware of the danger to himself in handling or using the same?"

To which the jury answered: "Yes."

The court then gave the following instruction:

"For your guidance in answering the following special issue the court charges you as follows: You are instructed that it was the duty of the plaintiff, Adrian Bynum, a minor, to exercise such care for his safety in using the

gunpowder in question as a boy of his age and intelligence would have exercised under the same circumstances, and his failure, if any, to exercise the said degree of care under such circumstances would be 'contributory negligence,' as that term is used in this charge."

Then the court submitted the issue as to contributory negligence of the plaintiff in the following words:

"Was the minor plaintiff, Adrian Bynum, guilty of 'contributory negligence,' as that term has been defined to you by the court, in attempting to handle and use the gunpowder in the manner in which you have found from the evidence that he did explode the same?"

To which the jury answered: "No."

[3] The defendant requested the following charge:

"The law imposes upon minors the duty of giving such attention to their surroundings, and care to avoid danger, as may fairly or reasonably be expected from persons of their age and capacity, and that a failure to give such attention and such care will be contributory negligence."

The trial court refused to give this special charge, and the appellant assigns error. We do not see anything wrong with the submission of the question of contributory negligence as given in the charge of the court. The charge as given informs the jury that it was the duty of "Adrian Bynum, a minor, to exercise such care for his safety in using the gunpowder in question as a boy of his age and intelligence should have exercised under such circumstances," and the charge as requested states that—

"The law imposes upon minors the duty of giving such attention to their surroundings and care to avoid danger, as may fairly or reasonably be expected from persons of their age and capacity."

The only material difference that we can see is that the court limited the instruction to Adrian Bynum, while the defendant's charge was with reference to the duty of minors generally. We overrule the third proposition.

[4] Under the fourth proposition the appellant urges error in the trial court in the refusal to submit two special charges as follows:

"(1) In the absence of any information to the contrary, or which would put a person of ordinary care on notice thereof, the defendant had the right to assume that the said Adrian Bynum, at the time of the purchase, if any, of the gunpowder, was endowed with the same mental capacity and discretion as boys of his age and intelligence have.

"(2) You are instructed that in the absence of any information to the contrary or of any fact that would put a person of ordinary care upon notice thereof, the defendant had the right to assume that the minor plaintiff, Adrian Bynum, at the time the sale, if any, was made to him, of the said gunpowder, was a boy who would use ordinary care in the use of the gunpowder so sold to him."

[5] We are inclined to think that the issue of Adrian Bynum's, hereinafter called plaintiff, contributory negligence was sufficiently submitted in the main charge wherein the court charges on contributory negligence. Moreover, we are of the opinion that the last charge above quoted and tendered by defendant is defective, in that it states that the defendant, in the absence of any fact that would put a person of ordinary care on notice, had the right to assume that the plaintiff was a boy who would use ordinary care in the use of gunpowder sold to him. We believe that the giving of such a charge, which eliminates the fact of the tender age and consequent inexperience of the boy, would be error. This assignment is overruled.

In the main charge the court instructed the jury as follows:

"You are further instructed that if you believe from the evidence herein that the defendant, A. J. Anderson Company, Incorporated, sold and delivered gunpowder to the minor plaintiff, Adrian Bynum, and if you further believe from the evidence that the said minor was inexperienced in the handling and use of said gunpowder and that he did not have sufficient discretion to handle and use said gunpowder without danger, if any, of injuring himself, and if you further believe from the evidence that the defendant knew of such facts, if any, or in the exercise of ordinary care could have known thereof, then you are instructed that such conduct on the part of the defendant would constitute 'negligence,' as that term is used in this charge."

The appellant urges that this charge is on the weight of the evidence, and that the giving of it constitutes reversible error. We think the objection to the charge ought to be sustained, unless it can be said that, if the jury believe that the minor was inexperienced in the handling and use of gunpowder, and that he did not have sufficient discretion to handle and use gunpowder without danger of injury to himself, and that defendant knew of such facts or in the exercise of ordinary care should have known thereof, the selling of the gunpowder under such circumstances was negligence per se. In McIntyre v. Orner, 166 Ind. 57, 76 N. E. 750, 4 L. R. A. (N. S.) 1130, 117 Am. St. Rep. 352, 8 Ann. Cas. 1087, the court said:

"We think the rule here contended for by appellant is too narrow. There are frequent cases, no doubt, where certain facts in evidence may be selected, which, if standing alone, would constitute negligence, but which, when considered with other facts and circumstances in evidence of a modifying character, renders the question of negligence equivocal. In such cases it would clearly be error for the court to enumerate only the former class of facts, and direct the jury, if they found them proved, that they should find the existence of negligence; and equally erroneous if the un-

stated facts would even tend to render the question of negligence doubtful, or such as equally prudent persons would characterize differently.

"But the controlling facts of a case may be of a character and so fully stated as to exclude all reasonable and possible modifying inference, and in such cases we see no impropriety in the court's informing the jury whether such facts if established are sufficient in law. In so doing there is no invasion of the province of the jury. The facts are for the jury, and the law for the court. If under the rules of the law a given class of facts, embodying all the controlling facts in evidence and the reasonable inferences arising therefrom constitute negligence, or due care, it is proper for the trial judge to tell the jury so for their guidance in returning their verdict. His primary duty on the bench is to see that the law is properly applied to the facts, and in principle he is doing the same thing whenever he is called upon to consider the correctness of a general verdict in the light of the special facts upon which it is founded as disclosed by answers to interrogatories."

[6, 7] Gunpowder is an article of merchandise dangerous in the hands of a child of tender years and inexperience, and one who sells it to such a minor, knowing that the minor intends to explode it, it seems to us is guilty of negligence as a matter of law. In 20 R. C. L. p. 172, the following language is used:

"But where, under the rules of the law, a given class of facts, embodying all the controlling facts in evidence and the reasonable inferences arising therefrom, constitute either negligence or due care, it is proper for the trial judge to tell the jury so for their guidance in returning their verdict. And an instruction that certain concurring facts constitute negligence which assumes nothing as facts but presents a hypothetical case raised by the evidence and applies the law thereto is held not to be an invasion of the province of the jury."

In the case of Bamberger v. Citizens' Street Ry. Co., 95 Tenn. 18, 31 S. W. 163, 28 L. R. A. 486, 49 Am. St. Rep. 909, the Tennessee Supreme Court had before it a case involving the death of a three year old child run over by a street car. The defendant pleaded contributory negligence on the part of the aunt, who had charge of the child, and the trial court submitted a charge thereon. The Supreme Court of Tennessee said:

" 'If you believe from the evidence that this child was in the custody of its aunt, and you further find that she allowed it to go onto the street in front of the Bamberger Grocery, on the sidewalk on the south side of Poplar Street, in front of which the street car company was running and operating its cars regularly every 10 or 15 minutes, and you further find that she allowed the child to stray off, from under her control, to a point so far distant from her that, in the exercise of ordinary care and prudence, she could not have prevented the child from getting into a place of danger, and it did go into such place, and was run over and killed, then this would be such negligence on the part of the aunt as would defeat a recovery, unless you believe that the motorman had time to stop the car and prevent the accident after the child left the sidewalk and started towards the track.'

"The substance of this charge is that if the custodian of the child permitted it to stray away from her control, so that, in the exercise of ordinary care and prudence, she could not have prevented it from going into a place of danger, which she might have reasonably apprehended it would do, then it would be negligence; and we do not think it subject to the exceptions made. It assumes nothing as facts, but presents a hypothetical case raised by the evidence, and applies the law in such case, but does not lead the jury to infer or believe such facts to be proven. Contributory negligence is generally a question of mixed law and fact, and in such cases it is the duty of the court to tell the jury what facts, if proved, will constitute contributory negligence. It is the duty of the jury, in such cases, to determine the facts, and apply the law, as laid down by the court, to such facts. 4 Am. & Eng. Encyclop. Law, p. 95; Thomp. Neg. § 10, p. 1235."

In the case of M., K. & T. Ry. v. Ferris, 23 Tex. Civ. App. 215, 55 S. W. 1119, writ of error refused, the Austin Court of Civil Appeals held that in an action to recover damages for the death of a person killed while driving across a railroad track a charge was proper which told the jury that if there was a failure on the part of the deceased to look and listen, and under the circumstances a person of ordinary prudence would have done so, such failure to look and listen would constitute contributory negligence.

We conclude that under the facts shown the trial court was justified in giving the charge complained of in the seventh proposition, and all assignments directed to the giving of such charge, including propositions 7 to 20, inclusive, should be overruled.

We find no reversible error in the assignments and propositions thereunder complaining of the statements in the closing argument of counsel for appellee. While in the course of the controversy arising by virtue of counsel for appellant objecting to certain arguments used by counsel for appellee, the court said: "I don't want any exceptions. * * * I must keep this record straight, and I wish you would get up and make your objection." To which counsel for defendant made reply: "Senator Hanger (counsel for plaintiff) has very kindly let me have my objections without interruption, Judge, and I think we ought to respect his rights, and let me make my objections without interrupting him." To which the court replied: "I will not do it." Counsel for defendant replied: "Then I will have to interrupt." The court further replied: "I am going to run this part of the court whether you like it or not." To which counsel for defendant replied:

"I am not showing you how to run the court, your honor. I am merely. * * *" And counsel for the plaintiff said: "It is the same question that has been raised before, and I have said that the exception could go to that and be considered for all purposes; he is having the argument taken down, and, if you will pardon me, I don't see how any man on earth can argue if he is going to be constantly interrupted." The court remarked: "I don't see how he can either, but I am going to take notice of his objection."

The defendant objected to this argument, and the court overruled the objection. The objection was to any reference to any purported or alleged instruction or statement made by the clerk as bearing upon the issue of negligence of the defendant. The court then said:

"I will permit Senator Hanger to argue that to the jury as often as he pleases and give you your exception to that without you calling the attention of the court to it any further."

[8] While there were some remarks made by the court, in the controversy between him and the appellant's counsel, which probably should not have been made, yet we do not think such remarks are of a nature to constitute reversible error. Unless it is manifest that the remarks of the court, or of counsel for the opposite side, unduly influenced the jury, the verdict and judgment will not be disturbed. In Am. National Ins. Co. v. Nussbaum (Tex. Civ. App.) 230 S. W. 1102, writ dismissed for want of jurisdiction, while defendant's counsel was cross-examining plaintiff's witness he asked her whether she meant for the jury to believe her story, and the plaintiff's counsel objected to the manner in which the witness was being examined. The court remarked that he did not believe in such manner of examination and did not approve of it, etc. The Galveston Court of Civil Appeals held that such remarks did not constitute reversible error. In Bank v. Hare, 152 S. W. 501, it was held that no reversible error was shown by the remark of the trial judge, in response to an objection of counsel and his statement that he reserved a bill of exceptions, that he would give counsel two bills if he desired them. It was stated that, while the remark was irrelevant and uncalled for, it did not constitute reversible error. With reference to the argument of counsel, it has always been the rule that judgment will not be reversed on account of an improper argument, unless the verdict is against the weight of the evidence, or that there are reasons tending to show that the jury may have been misled, their passions and sympathies aroused so that they are caused to render an unjust verdict. City of Lubbock v. Bagwell (Tex. Civ. App.) 206 S. W. 371; Freeman v. Griewe

(Tex. Civ. App.) 143 S. W. 730, writ of error denied.

[9] The verdict in this case is for $12,000, and appellant urges that it is excessive. Dr. O. E. Veatch testified that he was an ear, eye, nose, and throat specialist, practicing in Fort Worth, and that he treated the plaintiff for his injuries due to this accident; that at the time the boy came to his office his lids were burned noticeably and his eyes were very much inflamed and watering and that he complained of quite a little soreness; that as a result of this injury, in the judgment of the witness, the plaintiff's eyes have been giving him trouble ever since; that there is apparently a dry condition of the eyeball, and that plaintiff seems to have trouble in using his eyes; that when he reads, or uses his eyes for some time, he is subject to a nervous twitching and a batting of the eyes; that he complains at times of a dry, choking sensation in the throat, and when one of these attacks comes on he will cough until he becomes exhausted and falls to the ground or floor; that in the judgment of the witness these injuries and conditions are permanent, and in his judgment they were caused by the injuries received at the time of the explosion. While the verdict is rather large, yet we are not convinced that the judgment is excessive.

All assignments are overruled, and the judgment is affirmed.