THOMAS BREKKE, Appellee, v. J. A. ROTHERMAL, Appellant.

**NEGLIGENCE:** Acts Constituting—Automobile Accident. Record reviewed, and held insufficient to establish any negligence on the part of the operator of an automobile.

**NEGLIGENCE:** Contributory Negligence—Immature Children. In an action for personal injury to a child, proof that the child was under the age of seven years establishes a prima-facie case of nonnegligence on the part of such child. Instructions reviewed, and held to impose no undue burden upon the defendant in such a case.

**TRIAL:** Instructions—Immaterial Inaccuracy. A slight and immaterial inaccuracy in a recital to the jury of an undisputed fact will not justify a reversal.

*Appeal from Palo Alto District Court.*—N. J. LEE, Judge.

DECEMBER 14, 1923.

ACTION to recover damages for personal injury caused when a child of six years was struck by an automobile operated by the defendant. The action is brought by the father of the child, as next friend. In the opinion we refer to the child as though he were the appellee. Verdict for plaintiff, and defendant appeals.—*Reversed.*

*E. A.* and *W. H. Morling,* for appellant.

*Davidson & Burt,* for appellee.

FAVILLE, J.—The street upon which the schoolhouse in the town of Graettinger is located runs north and south. At the schoolhouse corner, this street intersects another one at right angles. The schoolhouse is located on the southwest corner of this intersection. On the morning of September 15, 1920, the appellee's father was driving an automobile in a southerly direction on this north and south street, approaching the intersection near the schoolhouse. He was bringing his children to school. A short distance behind him, the appellant was driving his automobile, and was also bringing his children to the schoolhouse. The two cars were a considerable distance apart, and as they approached the street intersection, the car in which appellee was riding turned to the left, close to the northeast corner of the intersection, and stopped so that the front wheels of the car were upon the east crossing at the intersection. Appellant's car was proceeding southward on the north and south street, Appellee's father, Brekke, was driving his car, in which were his two boys and two girls. Appellee was sitting in the front seat, with his father; and the other children, all of whom were older than appellee, were seated in the rear seat. When the car stopped at the intersection, it was headed nearly east, and the three children in the rear seat immediately got out on the right-hand, or south, side of the car, and started in a southwesterly direction across the street toward the schoolhouse. At that time, the bell was ringing, and the children were in a hurry. As the car approached the intersection, there were children in the street, hurrying to the schoolhouse. Appellant observed the three children, and the testimony tends to show that he sounded the horn on his automobile and applied the brakes, and the three children passed in front of his car toward the schoolhouse. It appears that the appellee also got out on the right-hand side of his father's car, but for some reason he went around the car to the left-hand side, next to his father, and then returned hurriedly around the front of the car, and started to run across the street in a southwesterly direction toward the schoolhouse. In so doing, he was struck by appellant's car, and received serious injuries. The boy was, at that time, six years of age.

1. NEGLIGENCE: acts constituting: automobile accident.

I. It is urged in behalf of the appellant that the evidence

fails to show that he was guilty of negligence in any of the particulars alleged in the petition, and that the trial court erred in refusing to direct a verdict in his behalf, because of such insufficient testimony.

The petition specifies five grounds of negligence, as follows: (1) Failure to give warning of the approach of the car; (2) operating the car at an excessive, dangerous, and reckless rate of speed; (3) failure to turn the car so as to avoid striking the appellee; (4) failure to have the car under sufficient control to stop before striking the appellee; (5) failure to keep a proper lookout to discover appellee in time to have stopped the car.

It is the contention of the appellant that the injury to the appellee was purely accidental, and in no way due to any negligence or fault on his part. It is his claim that the evidence presented a situation where the appellant was driving his car in a careful and prudent manner, having due regard to the situation in which he was placed, when the appellee suddenly and unexpectedly ran from the street, almost in front of appellant's car, striking it on the front end of the fender, or on the front end of the car.

The evidence is not clear as to the exact part of the car that collided with the appellee. It was either the front of the fender or the front of the car. He fell backward and on his side, and evidently to one side of the car. There is little substantial conflict in the evidence as to how the accident occurred. Appellee's father testified:

"Q. Did you notice the rate of speed it was apparently traveling? A. No, sir, I could not say as to the rate of speed. Q. You were accustomed to drive a car at that time, and accustomed to noticing the speed of cars when they were in motion? Knew something about the speed? A. Yes, sir. Q. Now what would be your best judgment as to about the speed that car was traveling, as it came from the road toward the intersection where you were that morning? A. In my judgment, it would be about fifteen or twenty miles,—something around there. Q. Did you notice any slackening of the speed,—that is, was the car going any slower at the time it got to the crossing at the intersection, or about that point, from what it was going before that? A. No, sir. * * * Q. Now describe, then, what you heard—

what sound it was you heard—that attracted your attention. A. It was what I thought was putting on the brakes pretty hard—what I thought it was; but that is all I know about it.''

Another witness for the appellee testified:

''I was running slowly all the way from home to school. I think I started about the time the five-minute bell was ringing. I saw Mr. Rothermal's car, as he was coming up the hill. I was about even with him when he turned the corner. I was running toward the schoolhouse on the west side of the north and south street. He was turning in that corner, or coming up the hill. I was about even with the south crossing. I continued to run until I got clear down to the Bondhus corner. Mr. Rothermal's car passed me about half way down the block. It reached the intersection of the street ahead of me. * * * The Rothermal car was traveling in the traveled path, out in the middle of the street. * * * As the Rothermal car came into the intersection, I think he blew the horn about at the crossing. I didn't hear more than one sound of the horn,—not so very sure I heard that. I thought I heard something that sounded like a horn. I went right on to school.''

A sister of appellee's testified:

''Q. Did you hear any noise of an automobile horn, or putting on of brakes, or anything of that kind? A. Well, I heard a crash, as if brakes were being put on, and I heard a scream. That is what attracted my attention. Previous to that, I hadn't heard any horn. I was on the sidewalk when I heard this crash of brakes, or whatever it was.''

Another witness for appellee testified:

''When Mr. Rothermal's car came down from the north, the two Brekke girls and Jacob were over on the west side of the road. The girls were almost over to the sidewalk. I didn't hear any sound of a horn or putting on brakes. The Rothermal car stopped over to the east of where it is shown on the plat. We were about even with it. Almost directly west. Q. Did you notice anything else in regard to this accident—see Herman coming across the road at that time? A. Well, it appeared to me as though he ran from in front of the Brekke car, in front of Mr. Brekke's car. Q. Oh, came from in front? A. Yes, sir.

Q. And then started across the street? A. Yes, sir. I didn't see him after that.''

The appellant was a witness in his own behalf, and testified:

"As I turned south from the main street, going towards the schoolhouse, I was running about eight miles an hour. I first saw the Brekke car about a half block north from where the accident happened. In my car were my oldest boy and my youngest one. The Brekke car was going about the same speed as my car, I should judge. I didn't notice it in particular. I know that I didn't gain on it. It was just about the same. The first that I noticed about the Brekke children was, Mr. Brekke turned out to the left side of the road, and stopped. Very shortly after that, the children commenced to get out of the right-hand side. By very shortly after that, I mean that it was a few seconds, possibly. There was no indication that the Brekke car was going to stop there at the intersection until it did stop. I didn't know whose car it was. I couldn't see who was in it. When I first noticed the children getting out, I was about twenty feet north—back twenty or twenty-two feet—possibly just a little back of the crossing there. The first I noticed about the children, they were getting out, or after they were out, I should say. Q. In what way did they get out of the car? A. Just one after the other. Just jumped right out, and started right out in a westerly direction, and without paying any attention to my approaching car. Q. Were they getting out hurriedly or not? A. Yes, they were apparently in quite a hurry. Q. Did they look either way? A. Well, I think they were looking west as they were running, but they didn't look north. When I saw them crossing the street, I blew the horn as I came closer to them, and they didn't look my way, and I blew my horn and put my foot on the brake. Then they looked around at my approaching car, and got out of the way. * * * Q. After they had passed, then just describe what took place. A. Well, it was only a short distance between my car and Mr. Brekke's car, but I didn't any more than get quite even with the front end of Brekke's car when there was another boy came from somewhere and dashed into my car. Q. Which way did he come from? A. From the east,—that is, I only saw him just a second

or two before he dashed into me. Q. And just about where did the boy and your car come together? A. Well, it was just about even with the front end,—I mean, even as far as east and west is concerned,—just about even with Mr. Brekke's car. Q. What part of your car did the little boy strike? A. The fender, the front end of the fender. Q. Did you see anything of him before he was right up against your car? A. No,—only just about two seconds before. It might have been just one or two steps before he hit the fender. It was almost instantly. * * * Just when these other children—when I blew the horn and threw the brake, these other children looked around, and got out of the road, and cleared the track, and I released the brakes and went ahead; but just as I got almost even with the front end of Mr. Brekke's car, this other boy dashed into me; and then I parked my car on the other side of the crossing, and got out and ran back, and did what I could for them."

The appellant's children who were in the car with him at the time testified substantially in accord with the appellant as to the manner in which the accident happened.

This case is strikingly similar in its facts to the case of *Borland v. Lenz,* 196 Iowa 1148, recently before this court. It is unnecessary to repeat here what we therein said in regard to the law in cases of this kind. As in the *Borland* case, so in this case, we are persuaded that the injury to the appellee, as described in the testimony, was solely the result of an accident, and was not due to any negligence on the part of the appellant. A driver of an automobile has a right to the use of the public street. He is not an insurer of the lives or safety of pedestrians who may also be upon the public street. All that is required of him is the exercise of ordinary care in the operation of his automobile. It is not every accident that can be the basis of a cause of action for negligence.

We reach the conclusion that the appellee failed to establish that the injury to him was the result of any negligent act on the part of the appellant, and that the appellant's motion for a directed verdict should have been sustained.

II. It is contended that the court erred in instructing the jury on the question of contributory negligence. The court instructed the jury that, if it found that the appellee, at the time

**2. NEGLIGENCE: contributory negligence: immature children.** of the accident, was six years of age, then he was presumed to be incapable of contributory negligence, and that, under such circumstances, before the jury would be justified in finding appellee guilty of contributory negligence, the appellant must, establish, by a preponderance of the evidence, that the appellee "failed to exercise that degree of care and discretion which children of a similar age ordinarily exercise under the same or similar circumstances."

It is the well established rule in this state that, in actions for damages because of personal injury claimed to have been caused by the negligence of a party, the duty rests upon the plaintiff to both allege and prove his freedom from contributory negligence. Certain exceptions recognized by the statute (Code Supplemental Supplement, 1915, Section 3593-a) have no application to this case.

Does the plaintiff in such an action meet the requirement of proving freedom from contributory negligence by merely establishing the fact that the plaintiff is a child under seven years of age, as was done in this case?

In *Thomas v. Chicago, M. & St. P. R. Co.*, 93 Iowa 248, we recognized the rule that a child three years and ten months of age was, as a matter of law, not guilty of contributory negligence. The rule was applied to a child under four years of age, in *Fink v. City of Des Moines*, 115 Iowa 641. See, also, *Fishburn v. Burlington & N. W. R. Co.*, 127 Iowa 483. In *Doggett v. Chicago, B. & Q. R. Co.*, 134 Iowa 690, we considered the authorities at length, and said:

"An examination of a very large number of cases relating to the liability of children for contributory negligence leads to the conclusion that, while in many of them no definite rule is announced, they substantially without conflict hold that the presumption of responsibility attaches at the age of fourteen years; that, prior to that age, there is a presumed incapacity which must be overcome in order to defeat recovery on account of contributory negligence, by proof that the child did not exercise the care and discretion usual with children of a similar age, which is assumed to be less than that required of persons of mature years; * * * It has been repeatedly held, with reference to children of tender years, that they are not chargeable with

contributory negligence; and, so far as we now discover, the cases in which this ruling has been made have been cases where the children were under seven years of age. * * * In cases involving the negligence of children between seven and fourteen years of age, we have held that they might, under the circumstances of the particular case, be guilty of negligence in not giving such attention to their surroundings and exercising such care to avoid danger as may fairly and reasonably be expected from persons of their age and capacity.''

In *McEldon v. Drew,* 138 Iowa 390, we said:

''Assimilating the rule which applies in criminal cases to civil ones, it has been held that children under seven years of age are incapable of contributory negligence as a matter of law, and that children between seven and fourteen are presumed incapable of contributory negligence, although the contrary may be shown. We seem to be committed to this rule, at least to a limited extent. See *Doggett v. Chicago, B. & Q. R. Co.,* 134 Iowa 690. Although we have also affirmed the doctrine that even children are bound to exercise that degree of care which children of the same age ordinarily exercise under similar circumstances, if the doctrine of presumption applies, then the case was clearly one for a jury; the presumption standing as sufficient until met by testimony from the defendant.''

See, also, *Long v. Ottumwa R. & L. Co.,* 162 Iowa 11; *Johnston v. Delano,* 175 Iowa 498; *Haller v. Quaker Oats Co.,* 181 Iowa 389; *Blakesley v. Standard Oil Co.,* 193 Iowa 315, and cases cited at page 322.

In many of the courts, the rule is recognized that a child under seven years of age is conclusively presumed to be incapable of contributory negligence. *Hackett v. Chicago City R. Co.,* 235 Ill. 116 (85 N. E. 320); *Dorr v. Atlantic Shore Line R. Co.,* 76 N. H. 160 (80 Atl. 336); *Reichle v. Philadelphia Rapid Transit Co.,* 241 Pa. 1 (88 Atl. 79); *Love v. Detroit, J. & C. R. Co.,* 170 Mich. 1 (135 N. W. 963); *Alabama Great So. R. Co. v. Snodgrass,* 201 Ala. 653 (79 So. 125); *McDonald v. City of Spring Valley,* 285 Ill. 52 (120 N. E. 476); *Quirk v. Metropolitan St. R. Co.,* 200 Mo. App. 585 (210 S. W. 103); *Terre Haute, I. & E. Trac. Co. v. Stevenson,* 73 Ind. App. 294 (126 N. E. 34);

*Press v. Connecticut Co.,* 95 Conn. 45 (109 Atl. 295) ; *Parrish v. City of Huntington,* 57 W. Va. 286 (50 S. E. 416).

As before stated, the duty rested upon the appellee to allege and prove his freedom from contributory negligence, in this case. It was so alleged. When appellee proved that, at the time of the accident, he was six years of age, he made out a prima-facie case of freedom from contributory negligence, by his evidence. It then rested with the appellant to go forward with proof to overcome this prima-facie case, or at least to place the evidence in equipoise.

Much is said in argument about the rule regarding the "shifting of the burden of proof." The term is frequently, and perhaps often erroneously, employed by courts and text-writers. In *Gibbs v. Farmers' & Mer. St. Bank,* 123 Iowa 736, we said:

"Even when the plaintiff has made out a prima-facie case, the burden of the proof does not shift to the defendant, in any proper sense. All that is meant by such an expression is that the other party must go forward with his proofs, if he would not have a judgment against him. *Powers v. Russell,* 13 Pick. [Mass.] 69. A presumption is sometimes said to shift the burden of the proof, and in some cases this is true; but, generally speaking, it does not have this effect. It simply assists in making out a prima-facie case, but does not change the burden of the proof."

In the case at bar, the court made no mention of a "shifting of the burden of proof," in the instructions to the jury. The jury was expressly told:

"The burden of proof in this action is on the plaintiff, and it is incumbent on him to establish his claims by a preponderance of the evidence."

The important part of Instruction No. 9, which is challenged, is as follows:

"If you find that Herman Brekke, at said time, was about six years of age, and that he was under fourteen years of age, then you are instructed that the law presumes that he was incapable of contributory negligence at the time of the accident complained of; and before you would be justified in finding that Herman Brekke was guilty of contributory negligence at the time of his injury, and in returning a verdict in favor of the

defendant because of such negligence on the part of Herman Brekke, the defendant must establish by a preponderance of the evidence that Herman Brekke, just before and at the time of the accident, failed to exercise that degree of care and discretion which children of a similar age ordinarily exercise and use under the same or similar circumstances. If you find from the greater weight of the evidence in this case that Herman Brekke, at the time and place of the accident in controversy, was possessed of the care, discretion, and prudence of children of a similar age, and that he failed to use and exercise the same, and that such failure on his part directly helped to cause his injury, as a part of the proximate cause or causes thereof, then it would be your duty to find that Herman Brekke was guilty of contributory negligence, and in such event your verdict should be for the defendant. In determining the question of whether Herman Brekke was guilty of contributory negligence, you should take into consideration, not only all of the things which he did or failed to do, in connection with the accident in question, as shown by the evidence, but you should also give due consideration to his age, experience, maturity or immaturity of his judgment, his education, the condition of his health, his knowledge of the surroundings, together with any other circumstances or facts bearing upon that question, as the same may be shown in the evidence.''

The instruction, when taken in connection with the other instruction on burden of proof, quoted above, was not erroneous. The court expressly told the jury that appellee could recover nothing if he was guilty of contributory negligence. The instructions as a whole placed no undue burden upon the appellant on the question of contributory negligence, and contain nothing on this question of which *he* is in a position to complain. The court instructed in accordance with the issues as presented by the pleadings, and the proof as offered by the parties. We find no error at this point.

III. Error is predicated upon the giving of a portion of Instruction No. 9, as follows:

''It appears from the evidence without dispute that, on the morning of the 15th of September, 1920, shortly before nine o'clock, the said Herman Brekke got out of his father's auto-

mobile in the street intersection near a public school in the town of Graettinger, Iowa, and that he started diagonally across the said street intersection to the southwest, for the purpose of going to said school.''

The contention is that the evidence shows that the appellee, after getting from the automobile, did not immediately start diagonally across the street, but first went around the front of the car and took something from his father, before he started across the street. The jury could not have been misled, nor the appellant in any way prejudiced by this instruction. The appellee did get from the car, and did start diagonally across the street intersection to the southwest. There was no dispute that the other children preceded him. The fact that he went to the opposite side of the car before starting diagonally across the street was before the jury. The instruction was not erroneous. It is also urged that the court in said instruction told the jury that it appeared from the evidence that, a short time before and at the time of the accident in question, the car was being driven in the traveled portion of the street. This was not error. The evidence showed that the automobile was ''in the beaten path'' of the street.

3. TRIAL: instructions: immaterial inaccuracy.

IV. Error is predicated on the giving of Instruction 10-A, to the effect that the negligence of the father of appellee, if he was negligent, could not be imputed to the appellee. The instruction correctly stated the law, as applicable to the case.

The case is close, on the fact question as to appellant's negligence.

For the error pointed out, the judgment of the district court must be reversed.—*Reversed.*

EVANS, ARTHUR, and DE GRAFF, JJ., concur.