PAUL KLINK, Appellee, v. THEODORE BANY et al., Appellants.
No. 39318.

APRIL 2, 1929.

*Sager & Sweet,* for appellant.

*Mears & Lovejoy, Jensen & Gwynne,* and *H. L. Leslie,* for appellee.

DE GRAFF, J.—It is a defined and well settled rule of law

in this state that a driver of a motor vehicle (defendant) is not legally bound "to anticipate or know the intentions or purpose" of a person who, being in a zone of safety immediately prior to a collision with said vehicle, suddenly and without warning enters a zone of danger, resulting in an injury to the said person by reason of collision with the vehicle. *Bishard v. Engelbeck*, 180 Iowa 1132. The decision in the *Bishard* case, with other cases presently cited, is *stare decisis* in the instant case.

*A fortiori* is this principle of law applicable, as in the case at bar, when the defendant auto driver was not aware of the presence of the person injured, and acting, under the circumstances, as a reasonable person, was not bound to discover the presence of the person injured. The doctrine of last clear chance is not here involved. Let us examine for a moment the *Bishard* case, supra. There was a directed verdict in favor of the defendant auto driver, and this ruling was sustained on appeal to this court. The accident happened in the city of Des Moines. Plaintiff's decedent, a six-year-old boy, was riding on the end of a wagon. The boy was on his way to school, and at a certain point near his school building, he suddenly jumped off the wagon and started east toward the school ground. The time was about 12:45 P. M. The street was paved, and the pavement was dry. The direction of both the wagon and the defendant's auto was toward the south. The boy was struck by the fender of the defendant's auto, and "the time allowed the driver to set the brakes and stop the automobile after the boy climbed to the pavement was very brief," and "the distance traveled by deceased [plaintiff's decedent] from the rear end of the wagon to the point of the collision could not have exceeded a few feet."

It is further said in the opinion:

"He [the auto driver] could not have applied the brakes, guided the machine, and given a warning signal after the boy started from the pavement to the east, before the collision."

Taking into consideration all of the facts and the applicable law, as recited in the opinion, the court, speaking through Stevens, J., concluded (page 1140):

"He [auto driver] was not bound to anticipate or know the intentions or purpose of deceased, if he [auto driver] saw him sitting on the end of the wagon box, nor, indeed, could he know."

The only legal conclusion that can be drawn from the case on both the law and the fact side is that it was a case of inevitable accident, and therefore the theory of non-liability applied. The case at bar is quite analogous, on the facts and the law, to the *Bishard* case, supra, and that case should be viewed as controlling.

Before passing to the line of decisions of this court based on the *Bishard* case, supra, let us turn to the facts of the instant case, which are stronger to support a directed verdict than the facts in the *Bishard* case, supra, and the later cases based thereon. Here it is shown that a boy a few months past seven years of age was riding home from school October 10, 1924, in the auto of a neighbor, who, in the spirit of kindness, had invited the boy and his sister to ride. This auto is known in the record as the "Ducker car," but Ducker is not involved in any sense with the claimed liability. The Ducker car was moving south on a dirt road, infrequently used, which road was not a marked highway or numbered trail. This roadway at or near the place of the accident was 23 feet and 6 inches "between grass." The two tracks in the road were about three feet apart. Both cars, respectively, were being driven on the proper side of the roadway, the Ducker car moving south, and the defendant's car moving north. The Ducker car stopped at a point about opposite the gate of the Klink yard and home where the children in question lived. The Klink home was on the east side of the roadway. This stop left the Ducker car on the west side of the roadway, and necessarily, the children would have to cross the pathway traveled by a car moving north on this roadway. The defendant did not see the boy in the Ducker car, and had no reason to anticipate the presence of the boy, or that the Ducker car was stopping to permit these children to get out to cross the road to reach their home. In fact, the defendant did not know that the boy was in the Ducker car, and did not see him until about the time that the fender of defendant's car struck the boy. The boy had been riding in the rear seat of the Ducker car, which was a Ford touring model, with winter top, in which the curtains slide up and down.

Ducker was not an eyewitness to the accident, but he did testify to some antecedent facts, and, *inter alia*, said that, when he slowed down and came to a stop, the Klink boy started to get

out of the car, and as the car was slowing down, the Klink boy was almost out of the car. When the Ducker car stopped, the boy jumped to the ground, and hurriedly went around the rear of the car. This fact in itself discloses the reason why the defendant did not see the boy and did not know of his presence until the boy ran into the pathway of the defendant's car. The only eyewitness to the accident called by the plaintiff was one Wedemeier, who, at the time of the accident, was 35 to 40 rods from the place of the accident. He testified:

"The Ducker car was standing in the beaten path on the west side of the road, and Bany came from the south in the other track on his own side, and passed the Ducker car at about three feet distance. This boy jumped out from the west side of the Ducker car and ran around in front of the Bany car. I did not see the boy getting out of the Ducker car before it stopped, but I did see him jump and run around in front of the other car. He must have run about three feet—the distance between the tracks. He got out of the door on the west side of the Ducker car, stepped down onto the road, and ran around right behind the Ducker car. That is the way it happened. But I say it was just like almost a wink that he jumped down, ran around in front of the other car."

Ducker's testimony clearly shows that the boy was in a hurry. The boy had already prepared himself to leave the car before it stopped, and just as it stopped, he was on the footboard, ready to jump, and did jump. Ducker heard the girl scream, which was about the time the boy jumped off the car, and says that it was "practically instantaneous." As said in the *Bishard* case, supra, it may well be said in this case that the defendant auto driver had no time to apply the brakes, even if he had seen the boy immediately before the collision. In the instant case, the defendant driver did not see the boy. The time interval between the leaving of the Ducker car by the boy and the collision was, as said by one of the plaintiff's witnesses, "practically instantaneous." The boy had but a few feet to travel before he entered the zone of danger. This the defendant could not anticipate, and under no rule of law was bound to anticipate.

The defendant observed the Ducker car coming to a stop, and that the little girl in the front seat was in the act of rising

from a sitting position and arranging her clothes. The defendant's car was approximately 30 rods from the Ducker car when the latter began to slow down, preparatory to a stop. The defendant's car, upon the assumption that it was traveling, at the time of the accident, at the lawful rate of 30 miles an hour (Section 5029, Code of 1924), would have reached the Ducker car in approximately 11 seconds. Only two eyewitnesses testified to the rate of speed of the defendant's car at the time of the accident,—Ducker, who could not state "how fast the defendant's car was coming," and the defendant, who was an experienced driver, who testified "that he was driving 15 to 20 miles an hour."

So far as the defendant's observation of the girl was concerned, there was no legal necessity for the defendant's stopping his car or taking precaution otherwise as to her; and, although defendant knew that she was riding in the car, and saw her shift her position, he had no basis for anticipating that she intended to leave the car at that time, with intent to cross to the east side of the road.

In the cases hereafter cited, the accidents in question, except one, happened on public streets; but in the instant case, the accident happened on a country roadway, where there was little traffic, and no public buildings or schools which might be the gathering place of people, young or old. The nearest intersection to the north of the place of accident was less than one-half mile, and the nearest intersection to the south, about a half mile. In the instant case, the defendant saw the roadway for a little more than a quarter of a mile, and the only thing that could or should challenge his attention was the Ducker car, which was proceeding south toward him on its proper side of the road, and which, as he approached, slowed down and stopped, with the apparent intention, as defendant testified, of driving into a driveway, which proved to be the entrance to the Klink home, and of permitting the defendant to pass before the Ducker car made the turn. The defendant did not see, and could not see, nor was he obligated to know, that a little boy was in the back seat of the Ducker car, or that the boy, without warning, and about the time the car stopped, would jump from the far side of the car, dodge around the back of the Ducker car, and run into or in front of the defendant's car, which was then mov-

ing on its proper side of the road, and, as far as the record in this case is concerned, was traveling at a legal rate of speed, since the only eyewitnesses to the accident testified that the speed of defendant's car was at a lawful rate.

There is no evidence that the defendant's car was not in proper condition. In fact, the evidence affirmatively shows that the brakes and the car in general were in good condition. The defendant was under no obligation to give a warning signal. There is no evidence that the defendant was not driving his car in a careful and prudent manner, or that he did not have his car under control as he approached the part of the highway where the plaintiff suddenly dashed out from behind another car, thereby coming in contact with the defendant's car.

Let us now turn to some of the decisions which are predicated on the rule announced in the *Bishard* case, supra. In *Borland v. Lenz*, 196 Iowa 1148, the injured boy was between five and six years old, and immediately prior to the accident, was in a position of safety. He suddenly left his zone of safety, and ran toward and into the defendant's automobile. We there said:

"To predicate a liability, some proximate negligence on the part of the defendant must be pleaded and proved. This is a jural postulate. The defendant is not an insurer. The theory of personal liability in cases of this character involves the blameworthiness of the act. * * * The facts of this case which we will presently note, disclose what we may term an inevitable accident. Negligence cannot be predicated on a purely accidental occurrence. * * * The plaintiff, immediately prior to the accident, was in a position of safety, and as a matter of law, the defendant was not bound to anticipate that plaintiff would suddenly run at or into his car, and thereby cause an injury to himself. Defendant was not bound 'to anticipate or know the intentions or purposes' of the plaintiff."

In *Brekke v. Rothermal*, 196 Iowa 1288, the doctrine of the *Borland* case is reaffirmed, and it was held, under the facts, that the injury to the plaintiff, as described in the testimony, was solely the result of an accident. It is said:

"A driver of an automobile has a right to the use of the public street. He is not an insurer of the lives or safety of

pedestrians who may also be upon the public street. All that is required of him is the exercise of ordinary care in the operation of his automobile. It is not every accident that can be the basis of a cause of action for negligence.''

In the *Brekke* case, supra, the boy injured was six years old. He dodged out of an automobile, and started across the street toward his schoolhouse, and was hit by the defendant's car. Five grounds of negligence were alleged, to wit: (1) Failure to give warning of the approach of the car; (2) operating a car at an excessive and dangerous rate of speed; (3) failure to turn the car, so as to avoid striking the plaintiff; (4) failure to have the car under sufficient control to stop, before striking the plaintiff; and (5) failure to keep a proper lookout to discover the plaintiff in time to stop the car. In passing, it may be said that the allegations of negligence in the case at bar are quite similar to those in the *Brekke* case. In that case, the cause was submitted to a jury, and a verdict was returned for the plaintiff. Upon the appeal of the defendant (auto driver), the judgment entered was reversed.

Again, the same doctrine is reaffirmed in *Faatz v. Sullivan*, 199 Iowa 875. It is there held that a driver of an automobile who observed that a pedestrian had, immediately prior to an accident, passed in front of his approaching car and reached a place of safety has a legal right to act on the assumption that the pedestrian will not suddenly retrace his steps and place himself in line with the approaching car. The injured child was a boy about eight-years of age, and was on his way to school. Reference is made to both the *Borland* and the *Brekke* decisions, supra, and it is held that it was error to refuse a requested instruction bottomed on the legal principle announced in the above-cited cases.

To the same effect is the holding in *Williams v. Cohn*, 201 Iowa 1121, in applying the theory of non-liability under the facts of the case.

The case at bar involves the legal principle announced in the cases heretofore cited, and the facts are quite analogous. We view this case as one of inevitable accident. The defendant's motion for a directed verdict and for a new trial should have

1248

been sustained. The judgment entered is, therefore,—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, MORLING, KINDIG, and WAGNER, JJ., concur.