GILBERT HOWK, by his next friend, G. W. HOWK, Appellant, v. C. W. ANDERSON et al., Appellees.

No. 42223.

MARCH 6, 1934.

REHEARING DENIED JUNE 23, 1934.

Brammer, Brody, Charlton & Parker and H. J. Thoma, for appellant.

C. D. Reed, for appellees.

KINDIG, J.—On June 30, 1932, Gilbert Howk was struck by an automobile driven by Mrs. C. W. Anderson, the defendant-appellee. The accident occurred while the appellee was driving her automobile southward over East Twenty-ninth street in Des Moines and

Gilbert Howk was running westward across East Twenty-ninth street. Gilbert had been to a mail box on the east side of East Twenty-ninth street and was returning with the mail.

East Twenty-ninth street is a paved thoroughfare. According to the record, the accident occurred near 4140 East Twenty-ninth street, which is about 100 feet south of the north city limits of Des Moines. At the time in question, Gilbert Howk, eight years of age, who lived on the west side of East Twenty-ninth street, had gone across the highway to a mail box located about two feet east of the pavement in front of 4140 East Twenty-ninth street. A mail carrier drove his truck northward over East Twenty-ninth street to the mail box and delivered mail to a Mrs. Kennedy and to Gilbert Howk. After thus delivering the mail, the mail carrier propelled his truck northward, and Gilbert Howk ran westward across the pavement to a point "within a foot or a step of the west side of the paving", where he was struck by the automobile driven by the appellee Mrs. Anderson. Apparently the appellee lived about a mile north of the Des Moines city limits on a graveled highway. She drove from her home over the graveled highway onto East Twenty-ninth street toward Des Moines.

So, on September 15, 1932, Gilbert Howk, by his next friend, G. W. Howk, the plaintiff-appellant, commenced this action to recover damages from C. W. Anderson and the appellee. Four grounds of negligence were stated in the petition as a basis for recovery. They were: First, that the appellee was driving her automobile without keeping the proper lookout; second, that she was driving her automobile in such a manner that it could not be stopped within a reasonable distance; third, that she gave no warning of her approach; and, fourth, that she was driving her automobile at an excessive rate of speed.

As before stated, the cause was dismissed without prejudice so far as the appellee C. W. Anderson is concerned. Mrs. C. W. Anderson, who is the appellee, is the only party defendant. For convenience she is hereinafter referred to as the appellee. Following the introduction of the testimony, the municipal court sustained a motion for a directed verdict made by the appellee. Judgment was entered accordingly, and appellant appeals. We will, for convenience, discuss the appellant's propositions in the following order.

I. It is earnestly argued by the appellant that the case should have gone to the jury on the theory that the appellee at the time of,

and just preceding, the accident was driving her automobile at an excessive rate of speed. There is a conflict in the evidence concerning the rate of speed. The mother of Gilbert Howk testified that the appellee approached the scene of the accident at the rate of 40 miles per hour. On the other hand, the appellee testified that she was driving her car, at the time in question, at a rate of speed which did not exceed 25 miles per hour.

Undoubtedly the mother of Gilbert Howk was very much excited when she first saw the appellee's automobile 25 feet from her boy. A collision was imminent. This witness lays no foundation for her ability to judge the speed of this automobile. Other facts and circumstances indicate that the appellee's automobile was not traveling 40 miles per hour. Assuming, however, for the purposes of this appeal, that the appellee's automobile was traveling at the rate of 40 miles per hour, nevertheless it does not appear that the case should have gone to the jury. Section 5030 of the 1931 Code provides:

"For the purpose of controlling traffic on their streets and highways, cities and towns are hereby divided into business districts, residence districts, school districts and suburban districts, as follows: 1. 'Business district.' The territory contiguous to a highway when fifty per cent or more of the frontage thereon for a distance of three hundred feet or more is occupied by buildings in use for business; 2. 'School district.' The territory contiguous to a highway for a distance of two hundred feet in either direction from a schoolhouse; 3. 'Residence district.' The territory contiguous to a highway, not comprising a business district or a school district where forty per cent or more of the frontage on such highway for a distance of three hundred feet or more is occupied by dwellings or by dwellings and buildings in use for business; 4. 'Suburban district.' All other parts of a city or town not included in the business, school or residence districts. The maximum speed of any vehicle in such districts shall be as follows: 1. In a business or school district, fifteen miles per hour. 2. In a residence district, twenty-five miles per hour. 3. In a suburban district, the same as that provided by law for vehicles on highways outside of cities and towns."

Manifestly under the record and the attached photographs, it is apparent that the accident in the case at bar occurred in a sub-

urban district, as defined under the statute. According to the pictures, the houses were practically as far apart as are houses in the country. Upon that record, therefore, we cannot say that any different speed limit applies in this portion of the outskirts of Des Moines than that which is in force in the country outside of Des Moines. Obviously a speed of 40 miles per hour ordinarily would not be excessive on a country highway. Crutchley v. Bruce, 214 Iowa 731, 240 N. W. 238.

■ While it is true that even in the country the driver of an automobile must so control it that he may stop within the assured clear distance ahead, yet this duty does not extend so far as to require that it must always be possible to bring a car to an immediate stop on the sudden arising of a dangerous situation which the driver could not have reasonably anticipated. Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893.

Gilbert, the little boy, was not traveling on a street intersection. Consequently the appellee, as she came near the place of the accident, was not approaching or traversing a crossing or intersection of public highways. See section 5031 of the 1931 Code.

Under these circumstances, it was not negligent for the appellee to drive her car 40 miles an hour past a mail truck at the time and place in question. See Crutchley v. Bruce, supra.

■ II. In the second place, it does not appear that the appellee, at the time in question, was driving her automobile at such a rate of speed that it could not be stopped within a reasonable distance. When testifying, the appellee said that she did not see Gilbert Howk until he arrived near, or had just passed, the center of the pavement. Of course, the speed of her automobile had nothing to do with this.

At the time that Gilbert Howk was near, or a little past, the center of the pavement, according to the testimony of his mother, the automobile was 25 or 30 feet from him. Immediately after seeing the boy in his unfortunate predicament, the appellee put on the brakes and stopped the car as quickly as possible. After the brakes were thus applied, the car traveled a distance of from 50 to 60 feet. According to the record, the car was stopped "just as quickly as it could be". It is to be remembered at this juncture that the mail carrier with the mail truck was in the vicinity of the mail box as the appellee approached. As the mail truck left the mail box, it proceeded northward. The driver of the mail truck started his car on

low, and was in intermediate at the time the accident occurred. This truck consisted of a cab and a body inclosed by a screen. "The cab (according to the mail carrier) is five feet wide; from bumper to bumper (the truck) is 15 feet long."

Mrs. Howk, who stood on the west side of the road, at times, because of the truck, could not see Mrs. Kennedy, who had just gotten her mail on the east side of the road. Some confusion exists concerning how far the truck had proceeded northward as Gilbert Howk started across the paving. Concerning this, Mrs. Kennedy testified: "I turned and started toward the house and at the same time the mailman started up and the little boy ran out from behind the truck." When testifying in regard to this, Mrs. G. W. Howk, the mother of Gilbert Howk, stated: "The mail man pulled up about ten feet, the distance where he was across Kennedy's driveway" when Gilbert Howk "started across the street". Undoubtedly, under this state of the record, Gilbert Howk, when he left the mail box and started across the street, was obscured from the appellee's view by the truck. As to how far Gilbert Howk traveled before he emerged from the obscurity of the truck, as thus placed by the witnesses, and came into the appellee's view, does not appear in the record. Under this state of facts, it is apparent that the speed of the appellee's car or her failure to sooner observe the little boy were not the proximate cause of the accident.

One the other hand, the cause of the accident was the act of the boy in suddenly starting across the street from behind the mail truck. Bishard v. Engelbeck, 180 Iowa 1132, 164 N. W. 203; Borland v. Lenz, 196 Iowa 1148, 194 N. W. 215; Brekke v. Rothermal, 196 Iowa 1288, 196 N. W. 84; Faatz v. Sullivan, 199 Iowa 875, 200 N. W. 321; Klink v. Bany, 207 Iowa 1241, 224 N. W. 540, 65 A. L. R. 187; Crutchley v. Bruce, supra; Kessler v. Robbins, 215 Iowa 327, 245 N. W. 284; Watson v. Home Mutual Insurance Association, 215 Iowa 670, 246 N. W. 655, 656. In the Watson case, just cited, a truck on a paved highway was traveling, according to a witness, at the rate of 30 miles per hour.

"One of the plaintiff's witnesses estimated the distance of the truck at the moment that Hobart (the boy injured) passed between the two parked automobiles and started across the pavement to be seventy-five feet. * * * The distance from the parked car to the black center line was seven feet. Hobart had therefore run a distance not to exceed ten or eleven feet. It is manifest that such dis-

tance could be covered by a human runner in the fraction of a second. The only opportunity that Smothers (the driver of the truck) had to observe the boy and to take any precaution for his safety was that period of time which transpired while the boy was running a distance of eleven feet. This is the equivalent of saying that he had no opportunity at all."

But, it is contended by the appellant in the case at bar that, notwithstanding the testimony of his witnesses, the mail truck was farther north at the time the boy started across the paved highway. The boy's father made measurements based upon the testimony of the boy's mother, and concluded that the truck was 22 feet from the mail box at the time the boy started across the road. Assuming that this is the fact, nevertheless there is nothing in the record to indicate how much, if any the view of the appellee was obscured by the truck as she approached the point of contact. According to the appellee, her view of objects beyond the truck was obscured by the truck. Her testimony at this point is: "I was just a little bit north of the truck when I saw Mrs. Kennedy turn toward the house. When I saw her turn I was in a position to see her just before the truck obstructed my view. The last time I saw her the front end of my car was coming even with the front end of the truck."

No measurements were made by engineers or other persons to determine the various lines of vision. It is argued by the appellant that the appellee could see the boy at the mail box from her vehicle when she was 50 feet north from the point of collision. There is no evidence in the record to substantiate this claim. If, however, the appellee, contrary to her uncontradicted statement, saw the little boy at the mail box, she would have no reason to believe that he would suddenly emerge from a place of safety into a zone of danger. See cases above cited. Perhaps, even under the appellant's theory, the appellee, in the exercise of due care would have been looking on the west side of the road at the time the boy started across. On the other hand, even if the appellee, under the assumption, had been watching the boy at the time he started across the street, she would have been only 50 feet from the line of the path traveled by him. Traveling at the rate of 40 miles per hour, her vehicle would go the distance in less than one second. Some part of that second would be consumed in the physical process of transferring the object of her vision to her brain in order to obtain the

necessary muscular action required to stop the car. Through the process of obeying her brain's orders to stop the car and then in executing such orders, some portion of the second would have been consumed. Here, as in Watson v. Home Mutual Insurance Association, supra, the boy, while running, traveled a distance of only 10 or 11 feet before he was to the center of the road. After the appellee in the case at bar applied the brakes, the car ran from 50 to 60 feet before stopping. Consequently, assuming that the brakes had been immediately applied at the 50-foot point, under the circumstances it was impossible for the appellee to have avoided the injury, even assuming that she saw the little boy the moment he left the mail box to proceed across the street. Watson v. Home Mutual Insurance Association, supra, and other cases above cited.

The speed of the car did not constitute negligence, and the speed of the car was not the proximate cause of the accident.

III. Another contention of the appellant is that the cause should have gone to the jury on the question of whether the appellee kept a proper lookout.

A complaint is made by the appellant that although the appellee saw Mrs. Kennedy at or near the mail box, yet she did not see the little boy before he was at or near the center of the street. This argument on the appellant's part would have more force were it not for the fact that the mail truck obscured the view of the appellee. It is to be remembered that East Twenty-ninth street at the place in question is very near the north city limits of Des Moines. As the appellee approached the city limits, she came over a graveled highway, as before explained. The end of the graveled highway was approximately 100 feet from the point of the accident. Concerning her observations when driving from the graveled portion onto the pavement, the appellee said: "When my car came to the pavement, I was looking south." That means that the appellee was looking directly over the paved highway ahead of her.

Of course, it is easy to comprehend that the appellee could see Mrs. Kennedy, a grown woman, without seeing the boy, because he was small. Although the appellee did not see the boy's mother on the right-hand side of the road, such fact does not, as contended by the appellant, indicate that the appellee was not making the proper observations down the paved portion of the highway. If the testimony of the boy's mother and that of Mrs. Kennedy concerning the location of the truck as the boy started across the road are taken as

true, then it is apparent that the little boy suddenly ran from behind the mail truck into the path of the appellee's car. On the other hand, assuming that the mathematical calculations of the boy's father are correct and that the mail truck was 22 feet north of the mail box when the boy started across the road, nevertheless it is apparent from the uncontradicted testimony of the appellee that her vision of the mail box and Mrs. Kennedy, and therefore necessarily her vision of the boy, were obscured by the mail truck.

According to the testimony of the mail carrier, his truck was 30 feet north of the mail box when he heard the impact caused by the collision of the car with the little boy. Just where the mail truck was located with reference to the mail box at the time the appellee passed the truck does not appear. Necessarily, however, the mail truck, when the appellee passed it, must have been less than 30 feet from the mail box. The appellee's vision was obstructed by the truck as the appellee approached and passed it. During the period of that obscurity, it is certain from the evidence that the little boy had started across the road. All this indicates without doubt that when the appellee's vision became unobscured after passing the truck, she was less than 30 feet from the path traveled by the little boy. When the appellee saw the little boy, judging from his location on the paved highway, her car was 25 or 30 feet from him, according to the testimony of the boy's mother. In her testimony, the appellee said that she did not see the little boy until after she came "even with the mail truck". After that point was passed by the appellee, the little boy suddenly appeared before her.

But it is argued by the appellant, although without any apparent basis, that the appellee could have seen the little boy at the mail box when her car was 50 feet from the point of the collision. Conceding that to be true, the appellee would have no reason to believe that the little boy would leave his place of safety at the mail box and suddenly dart across the street in front of her. This is what a little boy did under the facts in Watson v. Home Mutual Insurance Association, supra. As he thus ran, the little boy in the Watson case proceeded for a distance of approximately 11 feet in front of an on-coming truck. Concerning that fact, we said, reading on page 673 of the Watson case: "It is manifest that such distance could be covered by a human runner in the fraction of a second." Consequently we concluded in the Watson case that the driver of the truck had no opportunity to observe the little boy in his danger and stop

the truck before injuring him. If the driver of the truck in the Watson case was not guilty of negligence in not earlier seeing the little boy involved there, and avoid hitting him with the truck, then the appellee in the case at bar is not guilty of negligence because she did not observe Gilbert Howk earlier as he dashed from the mail box across the street in front of her automobile.

Under these circumstances, it cannot be said that there is any evidence on which a jury could say that the appellee did not keep a proper lookout. See cases above cited.

IV. Furthermore, it is argued by the appellant that the cause should have gone to the jury on the question of the appellee's negligence in failing to sound the automobile horn, or otherwise warn the little boy that her car was approaching. What has already been said, to a large extent, disposes of this question.

Until the appellee saw the little boy approaching or in danger, there was no need of sounding the automobile horn. Assuming, as argued by the appellant, that when the boy was at the mail box the appellee could see him 50 feet from the line finally traveled by him, yet she would have no reason to believe that the boy suddenly would emerge from a place of safety into one of danger. See cases above cited. When the appellee finally saw the boy, the sounding of the automobile horn would have been useless. Moreover, when the appellee did see the little boy, she used all her energy in attempting to stop the vehicle without striking him. During our consideration of a case involving the failure of the driver of an automobile to sound the horn, we said in Bishard v. Engelbeck, 180 Iowa, on page 1140, 164 N. W. 203:

"Taking into consideration all of the facts and circumstances surrounding the transaction, it is difficult to see how greater care could have been exercised by the defendant to avoid the accident. He did not sound the horn or give other warning to the driver of the vehicle or deceased of his approach; but before the boy got off the wagon there was no apparent necessity for his doing so, and under the circumstances it cannot be said that he was negligent in failing to give a signal of his approach." To the same effect, see Klink v. Bany (207 Iowa 1241, 224 N. W. 540, 65 A. L. R. 187), and Crutchley v. Bruce (214 Iowa 731, 240 N. W. 238), supra.

Under all the circumstances, it is apparent that there is no evidence to be considered by the jury upon this question.

Wherefore, the judgment of the municipal court must be, and hereby is, affirmed.—Affirmed.

CLAUSSEN, C. J., and EVANS, ALBERT, and DONEGAN, JJ., concur.