Fred B. **UNDERWOOD**, Plaintiff in Error,

v.

Edna Mae **FULTZ**, Defendant in Error.

No. 37741.

Supreme Court of Oklahoma.

Sept. 23, 1958.

Rehearing Denied Oct. 28, 1958.

Montgomery & Montgomery, Purcell, for plaintiff in error.

C. A. Ambrister, Muskogee, for defendant in error.

JACKSON, Justice.

Plaintiff, Fred B. Underwood, instituted this action against the defendant, Edna Mae Fultz, to recover damages for the death of his 19 months old son. The child was killed when struck by an automobile driven by defendant. At the close of the evidence the trial court sustained the defendant's motion for a directed verdict. Plaintiff appeals.

Plaintiff contends that there was sufficient evidence to make a case for the jury as to two specific charges of negligence—first, that the defendant failed to maintain a proper lookout; and, second, that she was driving at a greater rate of speed than was reasonable and proper under the existing conditions.

We will first consider the evidence as to the alleged failure to maintain a proper lookout. No one other than defendant saw the car strike the child. One of plaintiff's "near the scene" witnesses was in her house at the time, and the only other such witness was either in her house or in her back yard.

The accident occurred outside the city limits of Muskogee, Oklahoma, on York Street. Prior to the accident defendant was proceeding north on York Street. To the defendant's left and on the west side of the street were several houses. Plaintiff and his family lived in one of these houses. To defendant's right on the east side of the street was an open field with weeds growing in the bar ditch and along the edge of the highway.

Defendant testified that she had driven over this road many times and had, on prior occasions, seen children playing on the west side of the street but never on the east side. She further testified that approximately one block before reaching the point of impact she reduced her speed to between 30 and 35 miles an hour; that she was "paying attention to anything that was on the road"; that she "didn't see any children at all. Everything was clear"; that she did not see the child she struck until after the accident; that he came from the weeds to her right.

Upon being asked to tell the jury, in her own words, about the accident, she stated:

"Well, as I say, I was traveling on the east side of York Street and as I approached the point of impact all to my right it was nothing but an open field. It was all fenced along there, this field, and high weeds growing up I would say for a half a block or maybe a little more before I got to the point of impact, all along there forward to where I was driving and when I got just a little past north of Tull Street, I saw an object over my right front fender right about the headlight, just a moment, and I stopped my car immediately and I backed up across the road

over to the west side on the west shoulder and jumped out and there was some people, a lady, I believe and maybe some children, I don't remember, on the porch there, but as I jumped out I said 'Oh, I think I have hit a child' and about that time I think the mother came out on the porch and she ran out and I ran out and we—and I ran over across the road on the side and I looked for I would say a minute or two because I was kind of excited, of course, and I found the little boy in the ditch and his mother was just coming toward me * * *."

The foregoing testimony is the only direct evidence bearing on the question of whether defendant failed to maintain a proper lookout, and in our opinion wholly fails to disclose any negligence in this respect.

The effect of defendant's testimony is that she was keeping a lookout and did not see the child until the instant of impact for the reason that he was hidden by the weeds on the right side of the road and darted into the path of defendant's car at a time and in such manner that she was unable to avoid striking him. Negligence cannot be inferred from these facts. In Graham v. Dawson Produce Co., 106 Okl. 294, 234 P. 185, 186, we said:

"* * * negligence cannot be imputed to the defendant, nor can negligence be presumed, because of his failure to see deceased proceeding diagonally across the intersection from the east, and immediately behind a wagon going north, and in the absence of any proof of negligence it was the court's duty to determine the question of law so raised."

■ While a driver is required to be vigilant, he is not bound to anticipate that a child will suddenly run across the street in front of his car, when he is unaware of the presence of the child injured, and, acting under the circumstances as a reasonable person, was not bound to discover its

presence. Klink v. Bany, 207 Iowa 1241, 224 N.W. 540, 65 A.L.R. 187.

■ But plaintiff contends that his witnesses established certain facts which constituted circumstantial evidence of defendant's failure to maintain a proper lookout. In this connection it is argued that the evidence discloses that plaintiff's older boy was standing on the west side of the street at the time of the accident and that since defendant saw no one she obviously was not looking. The primary deficiency in this argument is the fact that there is no evidence that the older boy was near the street *at the time* of the accident. Plaintiff's wife did testify that she saw him there *as* the defendant stopped her car *after* backing it approximately one block. This is not circumstantial evidence that the older boy was standing near the street at the time of the accident. The interval of time between the accident and the time when he was seen near the road was so great that such a conclusion would be speculative and conjectural. In Tulsa County Truck & Fruit Growers Ass'n v. McMurphey, 185 Okl. 132, 90 P.2d 927, 929, we said:

"However, in order to support a verdict for the plaintiff, circumstantial evidence must be sufficient to render the fact or conclusion sought to be established more probable than one or more other conclusions which would be inconsistent with liability."

It is further argued that plaintiff's medical testimony circumstantially shows that the child struck by defendant entered the road from the west side where the view was unobstructed, rather than from the weeds on the east side. As a predicate for this argument plaintiff states that the X-rays of the child's skull show fracture lines on the right side of the skull but none on the left, so that the child must have been walking or running east at the time of the impact.

If there were *direct* testimony to the effect that the child had been struck by defendant's car on the right side of his head, it would constitute circumstantial evidence that he was proceeding from the west side

of the road; though not direct evidence because he could have turned around just prior to the impact. However, there is no *direct* evidence that the fracture resulted from a direct blow by the car. In fact, plaintiff's medical expert testified that he could not tell what type of blow caused the fracture and that it could have been caused by striking the pavement. Furthermore, the medical testimony does not disclose where the blow which caused the fracture was struck. It appears more likely that the blow was on the back of the head rather than on the right side. In order to *infer* that the child came from the west side of the road it would be necessary, first, to *infer* that the blow which caused the fracture was sustained on the right side of the skull and from this *infer* that the fracture resulted from a direct blow by the car rather than striking the pavement. In Shell Oil Co. v. Haunchild, 203 Okl. 456, 223 P.2d 333, we held in the second paragraph of the syllabus:

"Essential facts may be established by circumstantial evidence through permissible inferences drawn from proven facts but not through inference upon inference nor presumption upon presumption."

There was no competent evidence tending to show negligence on the part of the defendant in failing to maintain a proper lookout.

■ We now consider the charge of excessive speed. Plaintiff charged in his petition "that the defendant was operating her automobile at a rate of speed that was dangerous in said vicinity." The only evidence of defendant's speed was her testimony that she was driving between 30 and 35 miles per hour. Defendant had seen children on the west side of the road on prior occasions. Assuming arguendo that this would be sufficient to present a question to the jury as to whether such speed constituted primary negligence there remains the question of proximate cause. If, as a matter of law, there was no causal connection between the speed of defendant's car and the accident, then the trial court properly refused to submit the question of excessive speed to the jury.

In Richardson v. Parker, 205 Okl. 137, 235 P.2d 940, 943, we said:

" * * *. If it could be said that the speed of this truck was somewhat excessive that would not lead to liability unless the speed shown was the proximate cause of the injury."

■ In the instant case the evidence shows that defendant was paying attention and yet did not and could not see the child until the instant of the impact. Her speed would have had a causal connection if a slower speed might have enabled her to avoid striking the child, but under the evidence in this case defendant never had an opportunity to attempt avoiding the child and the same would have been true had she been driving at a slower speed at the moment she first became aware of the boy in the road. In Richardson v. Parker, supra, we considered this question in connection with a very similar fact situation. In that case, we said:

"Under the undisputed evidence the truck, under the control of the driver, was proceeding on the highway in a lawful manner and free of negligence, except for the aforesaid estimate as to speed, at the time the bicycle entered upon the highway at a point away from and out of the lawful pathway of the truck. In these circumstances there was no danger until the moment the boy on the seat of the bicycle suddenly jumped from the bicycle and released control of the bicycle into the truck's pathway.

\* \* \* \* \* \*

"It is apparent that the speed of the truck, considered by itself, cannot be said to have necessarily contributed to the accident. That is clear when we bear in mind that if the defendant's truck had traveled at any given lesser rate of speed but had started at a relative earlier time, it would have been at the place of accident just the same.

The speed, therefore, considered by itself, may have been a condition of the accident, but it was quite removed in the chain of causation. Something more must appear in order that it may be said that the speed of the truck contributed to the accident, as for instance, the duty to stop, the inability to do so by reason of the excessive speed, and that had defendant stopped, the accident could have been avoided."

In our opinion the trial court was correct in directing a verdict for defendant.

Affirmed.

WELCH, C. J., and HALLEY, JOHNSON, BLACKBIRD and CARLILE, JJ., concur.

CORN, V. C. J., and DAVISON and WILLIAMS, JJ., dissent.